**David E. MOORE, Appellant,**

v.

**Billy WALDROP, Appellee.**

**No. 10–04–00205–CV.**

Court of Appeals of Texas,
Waco.

May 25, 2005.

---

5. This issue is currently before the legislature in Tex. H.B. 261, 79th Leg., R.S. (2005).

Richard T. Miller, San Saba, for appellant.

Alfred Mackenzie, Haley & Davis PC, Waco, for appellee.

Before Chief Justice GRAY, Justice VANCE, and Justice REYNA.

## OPINION

FELIPE REYNA, Justice.

David E. Moore brought suit against Billy Waldrop claiming slander *per se* and intentional infliction of emotional distress. The trial court granted Waldrop's motion for summary judgment. Because we find that Waldrop conclusively established his entitlement to judgment on both of Moore's claims, we affirm.

## Background

In 1997, Moore was an employee of the Limestone County Sheriff's Department. A dispute arose between Moore and some members of the Limestone County Commissioner's Court, including Commissioner Waldrop. At a restaurant after a Commissioner's Court meeting, Waldrop and other commissioners asked Moore if he would like to sit at their table. Moore replied, "No, I don't want to sit at a table with a bunch of liars." After that incident,

Moore was called into his supervisor's office on two separate occasions to discuss how Waldrop was upset about Moore's comment at the restaurant. At one time, Moore's supervisor told Moore that Waldrop wanted Moore fired.

Subsequently, Moore and other Limestone County employees were involved in a suit against Limestone County for violations of the Fair Labor Standards Act. Most of the employees settled, but Moore refused to sign the settlement because he believed he was entitled to be paid for overtime hours worked in caring for the department's drug dog. Moore signed a separate settlement agreement for his care and maintenance of the dog. Shortly thereafter, Moore left to attend law school.

After Moore completed law school, Roy DeFriend, district attorney for Limestone County, hired Moore as an assistant district attorney despite DeFriend's expressed concerns that hiring Moore would anger Waldrop. Shortly thereafter, while in the presence of numerous colleagues and other county officials, Waldrop asked DeFriend if he was considering hiring Moore. DeFriend stated that he had already done so. Waldrop replied, "You don't want to hire him, he's a crook." Waldrop acknowledges that he made this statement, but states that it was made to DeFriend only.

During a budget session, DeFriend and Moore received notice that the Commissioner's Court was considering cutting the funding for Moore's position. At this time, Commissioner Don Ford approached Moore and asked him what he had done to Waldrop. Ford told Moore that Waldrop "is still mouthing and hates your guts," and that Waldrop was still angry over Moore's 1997 comment.

Subsequently, Moore filed suit against Waldrop claiming slander *per se* and intentional infliction of emotional distress. Waldrop filed a traditional motion for summary judgment. The trial court granted the motion.

Moore argues on appeal that the trial court erred in granting Waldrop's motion for summary judgment because fact issues exist as to whether (1) Waldrop's comment was slanderous *per se;* (2) Waldrop's conduct was extreme and outrageous or caused Moore to suffer severe emotional distress; (3) Waldrop is entitled to sovereign immunity; and (4) Moore was a public official.

### Standard of Review

The standard of review for a traditional summary judgment is well established. *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548 (Tex.1985). The movant has the burden of showing that no genuine issue of material fact exists and that he is entitled to summary judgment as a matter of law. *Am. Tobacco Co. v. Grinnell,* 951 S.W.2d 420, 425 (Tex.1997); *Ash v. Hack Branch Distributing Co., Inc.,* 54 S.W.3d 401, 413 (Tex.App.-Waco 2001, pet. denied). The reviewing court must accept all evidence favorable to the non-movant as true. *Nixon,* 690 S.W.2d at 549; *Ash,* 54 S.W.3d at 413. Every reasonable inference must be indulged in favor of the non-movant and all doubts resolved in its favor. *Grinnell,* 951 S.W.2d at 425; *Ash,* 54 S.W.3d at 413. The non-movant need not respond to the motion for summary judgment unless the movant meets its burden of proof. *Rhone–Poulenc, Inc. v. Steel,* 997 S.W.2d 217, 222–23 (Tex.1999). But if the movant meets its burden of proof, the non-movant must present evidence to raise a fact issue. *Centeq Realty, Inc. v. Siegler,* 899 S.W.2d 195, 197 (Tex.1995); *Rosas v. Hatz,* 147 S.W.3d 560, 564 (Tex.App.-Waco 2004, no pet.). When the trial court does not specify the basis for its summary judgment, as

here, the appealing party must show it is error to base it on any ground asserted in the motion. *Star–Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex.1995); *Rosas*, 147 S.W.3d at 564.

## Slander *Per Se*

Moore argues in his first issue that fact issues exist as to whether Waldrop's comment is slanderous *per se.*

Defamation is a false statement about a plaintiff published to a third person without legal excuse which damages the plaintiff's reputation. *Doe v. Mobile Video Tapes, Inc.*, 43 S.W.3d 40, 48 (Tex. App.-Corpus Christi 2001, no pet.). Libel is defamation in written or other graphic form. TEX. CIV. PRAC. & REM.CODE ANN. § 73.001 (Vernon 1997); *Doe*, 43 S.W.3d at 48. Slander is orally communicated defamation. *Randall's Food Mkts., Inc. v. Johnson*, 891 S.W.2d 640, 646 (Tex.1995); *Doe*, 43 S.W.3d at 48.

A defamatory oral statement may be slander *per se* or slander *per quod.*[1] *Minyard Food Stores, Inc. v. Goodman*, 50 S.W.3d 131, 140 (Tex.App.-Fort Worth 2001), *rev'd on other grounds*, 80 S.W.3d 573 (Tex.2002). If a statement is slander *per quod*, the plaintiff must present proof of actual damages. *Id.* If the statement is slander *per se*, no independent proof of damage to the plaintiff's reputation or of mental anguish is required, as the slander itself gives rise to a presumption of these damages. *Mustang Athletic Corp. v. Monroe*, 137 S.W.3d 336, 339 (Tex.App.-Beaumont 2004, no pet.) (citing *Leyendecker & Assocs., Inc. v. Wechter*, 683 S.W.2d 369, 374 (Tex.1984) (op. on reh'g)).

To be considered slander *per se*, the statement must (1) impute the commission of a crime; (2) impute contraction of a loathsome disease; (3) cause injury to a person's office, business, profession, or calling; or (4) impute sexual misconduct. *Goodman*, 50 S.W.3d at 140. Whether words are capable of the defamatory meaning the plaintiff attributes to them is a question of law for the court. *Musser v. Smith Protective Serv., Inc.*, 723 S.W.2d 653, 654–55 (Tex.1987).

In his pleadings, Moore alleges that Waldrop's statement calling Moore a crook is slanderous *per se* because it imputes the commission of a crime and caused injury to his profession.

However, taken by itself, Waldrop's statement is not slanderous *per se. See Billington v. Houston Fire & Cas. Ins. Co.*, 226 S.W.2d 494, 496 (Tex.Civ.App., Fort Worth–1950, no writ) (holding words such as 'liar' and 'crook' are not actionable *per se*); *Arant v. Jaffe*, 436 S.W.2d 169, 176 (Tex.Civ.App.-Dallas 1968, no writ) ('phony', 'cheat', and 'crook', in the absence of innuendo are not actionable *per se*). The parties disagree upon whether innuendo may be used to clarify the meaning of Waldrop's statement. Once applied, Moore argues the innuendo will turn Waldrop's otherwise inactionable statement into an actionable one.

Waldrop argues that a trial court should not use innuendo to expound upon the meaning of a statement when the plaintiff is arguing that the statement is slanderous *per se.* He argues that if innuendo must be used to interpret the meaning of the statement, then the statement cannot be *per se* slanderous. Waldrop cites *Mont-*

---

**1.** *Per se* is defined as "of, in, or by itself; standing alone." Black's Law Dictionary 1178 (Bryan A. Garner ed., 8th ed., West 2004). *Per quod* is Latin for "whereby," and is de-fined as "requiring reference to additional facts." Black's Law Dictionary 1177 (Bryan A. Garner ed., 8th ed., West 2004).

*gomery Ward & Co. v. Peaster* which states:

If particular language alleged to be defamatory may, or may not, be so, according to other facts or circumstances, then an innuendo is required in order to tender as an issue the fact that the words conveyed to hearers the defamatory meaning. In a slander suit, not involving an imputation of unchastity in a female, if an innuendo is required, then the allegation and proof of special damages is also required in order to authorize a recovery.

178 S.W.2d 302, 305 (Tex.Civ.App.-Eastland 1944, no writ) (citations omitted).

Waldrop also argues that the courts in *Billington* and *Arant* refused to use innuendo to interpret the meaning of the word "crook." However, Moore distinguishes these cases. In *Billington*, the court found that "crook" was not actionable *per se*, but stated that it would not use innuendo to clarify the meaning of "crook" because the plaintiff did not plead innuendo. 226 S.W.2d at 497 ("[the statements] were practically meaningless in the absence of a pleading of innuendo."). Moore argues that because he pleaded innuendo in his first amended petition, innuendo should be used. Also, in *Arant* the court found that the defendant's statement was not actionable *per se* because the plaintiff failed to substantiate her allegations of innuendo with proof. 436 S.W.2d at 176–78. Again, Moore argues, innuendo was or could have been used.

Moore also points to well known language in defamation cases as proof that a trial court is allowed to consider innuendo. This language states that an allegedly defamatory statement "must be construed as a whole, in light of surrounding circumstances, based upon how a person of ordinary intelligence would perceive the entire statement." *New Times, Inc. v. Isaacks,*

146 S.W.3d 144, 154 (Tex.2004); *Carr v. Brasher,* 776 S.W.2d 567, 571 (Tex.1989); *Cram Roofing Co. v. Parker,* 131 S.W.3d 84, 90 (Tex.App.-San Antonio 2003, no pet.).

Moore states that the circumstances surrounding Waldrop's statement concern his settlement agreement with Limestone County. By calling him a crook, Moore states that Waldrop insinuated that Moore had committed a crime by falsifying government records concerning his overtime hours in the settlement agreement. In his deposition, Waldrop admits that this is the reason that he called Moore a crook, and that he still believes that Moore was not truthful in his accounting of the overtime hours he spent taking care of the drug dog. Moore argues that those who heard Waldrop's statement knew of the circumstances surrounding the settlement with Limestone County, and thus knew what Waldrop meant when he called Moore a crook.

■ However there is a difference between the language quoted by Moore, the consideration of surrounding circumstances, and the definition of innuendo at common law. Innuendo is extrinsic evidence used to prove a statement's defamatory nature. 50 Am.Jur.2d *Libel and Slander* § 137 (1995). It includes the aid of inducements, colloquialisms, and explanatory circumstances. *Id.*

■ Considering the surrounding circumstances does not necessarily require the use of extrinsic evidence. The surrounding circumstances are the setting in which the alleged slanderous statement is spoken, consisting of the context of the statement and the common meaning attached to the statement. Common sense requires courts to understand the statement as ordinary men and women would, considering the temper of the times, and

the current of contemporary public opinions. "The test is what construction would be placed upon such language by the average reasonable person or the general public, not by the plaintiff." *Schauer v. Memorial Care Syst.,* 856 S.W.2d 437, 448 (Tex.App.-Houston [1st Dist.] 1993, no writ). If the statement seen in this light has but one clear and obvious meaning, then no further inquiry is necessary. *Gray v. HEB Food Store No. 4.,* 941 S.W.2d 327, 329 (Tex.App.-Corpus Christi 1997, writ denied) ("If a statement unambiguously and falsely imputes criminal conduct to plaintiff, it is defamatory *per se* "). However, if the statement is ambiguous, or if the full effect of the statement cannot be understood without the use of extrinsic evidence, then the trial court must go beyond the snapshot of time in which the statement was published and admit into consideration inducements and explanatory circumstances. *See Peaster,* 178 S.W.2d at 305; *Billington,* 226 S.W.2d at 496.

 Accordingly, when dealing with the initial question of whether a statement is slanderous, a trial court should look to innuendo and explanatory circumstances in order to interpret the meaning of the statement. Consideration of innuendo and extrinsic evidence is sometimes the only way to know whether the statement is slanderous or not. Yet, once innuendo is being considered, the statement has moved beyond the analysis of slander *per se* and into that of slander *per quod,* because innuendo not only reflects the meaning of the statement but also illuminates the amount of harm the plaintiff may have suffered. For if innuendo is used to prove slander, then innuendo must also be used to prove damage to the plaintiff. In order to prove harm, the plaintiff must prove that those to whom the statement was published understood the meaning that the plaintiff attaches to the statement.

*See Diaz v. Rankin,* 777 S.W.2d 496, 499 (Tex.App.-Corpus Christi 1989, no writ); *Bergman v. Oshman's Sporting Goods, Inc.,* 594 S.W.2d 814, 816 (Tex.Civ.App.-Tyler 1980, no writ) ("third party must understand the words in a defamatory sense"). Therefore, when innuendo is required, it follows that proof of damages must be required as well.

 Consequently, innuendo should never be considered when interpreting slander *per se.* The very definition of *"per se,"* "in and of itself," precludes the use of innuendo. If the statement, taken by itself and as a whole, is slanderous, it will require no extrinsic evidence to clarify its meaning. It will stand alone. *Burnaman v. J.C. Penney Co.,* 181 F.Supp. 633, 636–37 (S.D.Tex.1960) ("Statements were not slanderous *per se* and could only become so by innuendo added by plaintiffs."). And by its very nature of being *per se* slanderous, damages are presumed, because contained in the statement itself is a single meaning so obviously harmful that all proof of damages may be dispensed with.

Standing alone, the word "crook" is a general disparagement. *See Billington,* 226 S.W.2d at 496. A specific crime or moral turpitude is not imputed, nor does it injure Moore's profession.

> The threat to ruin appellant and to hurt him, and to put him out of business, and to send a letter to Austin to accomplish that purpose, did not impute the commission of a crime. Nor were the words ["crook" and "liar"], taken by themselves and without explanation, such as would tend to affect appellant injuriously in his office, profession, or occupation.

*Id.* On its face, Waldrop's statement is but mere "name calling." Waldrop's words may indeed be slander *per quod* when innuendo and extrinsic evidence are considered, but it is not *per se* slanderous so

as to absolve Moore from proving special damages.

Therefore, the trial court did not err in finding that as a matter of law Waldrop's statement was not slanderous *per se. See Grinnell,* 951 S.W.2d at 425; *Ash,* 54 S.W.3d at 413. As Moore did not plead a cause of action for slander *per quod* or special damages, the trial court did not err in granting Waldrop's motion for summary judgment on Moore's slander claim. Accordingly, we overrule Moore's first issue.

### Intentional Infliction of Emotional Distress

 Moore argues in his second issue that the trial court erred in granting Waldrop's motion for summary judgment because fact issues exist as to whether Waldrop's conduct was extreme and outrageous or whether Moore suffered severe emotional distress.

To recover damages for intentional infliction of emotional distress, a plaintiff must prove that (1) the defendant acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) the defendant's actions caused the plaintiff emotional distress; and (4) the resulting emotional distress was severe. *Standard Fruit & Vegetable Co. v. Johnson,* 985 S.W.2d 62, 65 (Tex.1998); *Durckel v. St. Joseph Hosp.,* 78 S.W.3d 576, 586 (Tex.App.-Houston [14th Dist.] 2002, no pet.).

Waldrop argues that his conduct is not extreme or outrageous. We agree. Waldrop's statement while rude, and certainly not inconsequential, does not rise to the level of outrageous behavior. Even if we consider Moore's assertions that Waldrop was actively attempting to thwart his employment as an assistant district attorney, these actions are not so extreme as to come within the definitions of outrageous

behavior. Insensitive and rude behavior, "mere insults, indignities, threats, annoyances, *petty oppressions,* or other trivialities," are not considered outrageous conduct. *Porterfield v. Galen Hosp. Corp.,* 948 S.W.2d 916, 920 (Tex.App.-San Antonio 1997, writ denied) (emphasis added); *Creditwatch, Inc. v. Jackson,* 157 S.W.3d 814, 817–18 (Tex.2005).

Therefore, the trial court did not err in finding as a matter of law that Waldrop's conduct was not extreme or outrageous. *See Grinnell,* 951 S.W.2d at 425; *Ash,* 54 S.W.3d at 413. Accordingly, we overrule Moore's second issue.

### Conclusion

Because issues one and two are dispositive of this appeal, we need not address Moore's other issues. Accordingly, we affirm the judgment of the trial court.