

# IN THE
# TENTH COURT OF APPEALS

### No. 10-11-00083-CV

PHONG VAN METER,

Appellant

v.

BENNIE DALE MORRIS,

Appellee

From the 249th District Court
Johnson County, Texas
Trial Court No. C200900562

## MEMORANDUM OPINION

In this appeal, appellant, Phong Van Meter, challenges the trial court's final judgment in favor of appellee, Bennie Dale Morris, regarding Morris's claim for defamation. By one issue, Van Meter argues that the evidence supporting the trial court's judgment is "not sufficient as a matter of law." We affirm.

### I. FACTUAL BACKGROUND

The dispute in this matter pertains to comments made by Van Meter to Morris while Morris dined in Van Meter's restaurant. Morris, a man who, by all accounts, has

a good reputation in the community, testified that he went to Van Meter's restaurant two or three times a day for twenty years. According to Morris, beginning in 2007 and continuing in 2008, Van Meter began asking him, "Where is your wife" and "Where is your husband." These questions were asked when the restaurant was full of customers and allegedly referred to Morris's friend, Glen Warren. In his affidavit, Morris averred that Van Meter's questions implied that he and Warren were involved in a homosexual relationship, even though both testified that they were heterosexual. Morris asked Van Meter to stop asking such questions, but she persisted. Van Meter purportedly told Morris that it would take a lawsuit to get her to stop asking such questions. Morris testified that he was embarrassed and upset about the questioning. Warren noted that Morris became very stressed as a result of the questioning. In fact, shortly after he stopped frequenting Van Meter's restaurant, Morris suffered a stroke. When asked whether Van Meter's questions were intended to harass him, Morris responded that Van Meter is "an evil old person" who is incapable of understanding how badly her questions made him feel. Morris later testified that he earns a living by "build[ing] driveways and spread[ing] sand for fixing yards around houses" and that, as a result of Van Meter's comments, his business suffered. However, he later admitted that his business may have declined as a result of the economy.[1]

On cross-examination, Morris stated that "some of [his] friends told [him] that [Van Meter] was saying [he was gay]." But, he later acknowledged that Van Meter

---

[1] When asked about the effect of the economy on Morris's business, Warren disagreed that the decline associated with Morris's business was due to the economy; rather, Warren claimed that the decline in Morris's business was attributable to Van Meter's comments.

never specifically stated that he and Warren "were homosexual lovers." Morris also admitted that Van Meter's comments did not prompt him to see a psychiatrist or psychologist, nor did they cause him to attempt to commit suicide.

Warren noted that Van Meter continued with the questioning until he stopped frequenting the restaurant. Warren also recalled an instance where he saw Van Meter and a waitress named Debbie outside of the restaurant, presumably on break. During the break, Warren observed Debbie climb on the top of his truck and write the following on his windshield, "Looking for gay friends." Warren testified that he saw Van Meter laugh when Debbie wrote this statement on his windshield. Like Morris, Warren was embarrassed and upset about the comments. With respect to Morris's suffering as a result of the comments, Warren stated the following: "Well, he kind of stays to himself a lot more. He doesn't go there no more. We go like to outside of Alvarado—or he does, I do as well. We just on occasion drive through Alvarado, but we do not stop at Frank's Place [Van Meter's restaurant]." Warren later admitted that he never heard Van Meter specifically allege that he and Morris were "homosexual lovers."

Douglas Lee, Morris's friend of about ten years, testified that he heard Van Meter ask Morris, "Where was his girlfriend." Lee did not understand the question to imply that Morris and Warren were "homosexual lovers," but he could see that others who did not know Morris or Warren "would take it the wrong way." Lee also recalled that Van Meter's questions were loud enough for others in the restaurant to hear. Lee later

testified that he did not believe Van Meter's comments were made intentionally or with knowledge that Morris would be upset when hearing the comments.

Dillon Hammons, Morris's friend of "two or three years," testified that he had never heard Van Meter make derogatory comments about Morris or Warren. However, based on Morris and Warren's statements, he believed that Van Meter had made derogatory comments and described the effect of her comments on Morris as follows:

> It seemed like it has caused him some, I guess, mental stress or whatever. I know he's had a stroke recently. But mental, you know, what—let's see, what would be the word for it? I'm trying to think here. Anyway—
>
> . . . .
>
> Yes, that's what I'm trying to say, emotional.
>
> . . . .
>
> Yeah. As far as, you know, like going back to the mental, he seems—like he has the stroke, it affected, repeats himself a little bit, affecting his character, you know, seems stressed out about the deal. He's talked about it to me quite a bit.

Hammons also noted that Van Meter's comments affected Morris's business:

> I believe more than likely it has. I know at the time he was doing a little bit or work spreading gravel and if, you know, the way society is about that type of people, I don't know if that [it] maybe run [sic] some of his business off, you know, people hearing him, you know, rumored that he was a homosexual.

## II.    PROCEDURAL BACKGROUND

On October 6, 2009, Morris filed his original petition, asserting a claim for defamation. He later amended his petition to include: (1) claims for intentional and negligent infliction of emotional distress; and (2) a request for injunctive relief. After a

trial before the bench, the trial court concluded that Morris had proved his defamation claim and awarded him $5,000 in mental-anguish damages. The trial court also permanently enjoined Van Meter from "making or publishing defamatory, libelous[,] and slanderous statements to the detriment of Plaintiff and his reputation in the community, including but not limited to statements which would convey or insinuate that the Plaintiff and Glenn [sic] Milford Warren are homosexual partners or lovers."[2] Thereafter, Van Meter filed motions to set aside the judgment and for new trial, both of which were overruled by operation of law. *See* TEX. R. CIV. P. 329b(c). Further, at the urging of Van Meter, the trial court issued numerous findings of fact and conclusions of law. This appeal followed.

### III. STANDARD OF REVIEW

A trial court's findings of fact in a bench trial "have the same force and dignity as the jury's verdict upon questions." *Anderson v. City of Seven Points*, 806 S.W.2d 791, 794 (Tex. 1991). Further, "[w]hen the trial court acts as a fact[-]finder, its findings are reviewed under legal and factual sufficiency standards." *In re Doe*, 19 S.W.3d 249, 253 (Tex. 2000).

We review the trial court's conclusions of law de novo. *See BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). Conclusions of law are upheld if the judgment can be sustained on any legal theory the evidence supports. *See Stable Energy, L.P. v. Newberry*, 999 S.W.2d 538, 547 (Tex. App.—Austin 1999, pet. denied); *see also*

---

[2] On appeal, Van Meter does not challenge the propriety of the trial court's permanent injunction. Instead, she focuses her argument on the portion of the trial court's judgment pertaining to defamation.

*Fulgham v. Fischer*, No. 05-10-00097-CV, 2011 Tex. App. LEXIS 5865, at *6 (Tex. App.—Dallas July 29, 2011, no pet.). Thus, incorrect conclusions of law do not require reversal if the controlling findings of fact support the judgment under a correct legal theory. *See Westech Eng'g, Inc. v. Clearwater Constructors, Inc.*, 835 S.W.2d 190, 196 (Tex. App.—Austin 1992, no writ); *see also Fulgham*, 2011 Tex. App. LEXIS 5865, at *6. Moreover, conclusions of law may not be reversed unless they are erroneous as a matter of law. *Westech Eng'g, Inc.*, 835 S.W.2d at 196.

In reviewing for legal sufficiency of the evidence, we consider the evidence in the light most favorable to the trial court's finding. *See AutoZone, Inc. v. Reyes*, 272 S.W.3d 588, 592 (Tex. 2008). The test for legal sufficiency "must always be whether the evidence at trial would enable [a] reasonable and fair-minded [fact-finder] to reach the [conclusion] under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005). We must credit favorable evidence if a reasonable fact-finder could, and disregard contrary evidence unless a reasonable fact-finder could not. *Id.* The fact-finder is the sole judge of the credibility of the witnesses and the weight to be assigned to their testimony. *Id.* at 819.

## IV. ANALYSIS[3]

In her sole issue, Van Meter asserts that the evidence supporting the trial court's judgment pertaining to Morris's defamation claim is insufficient as a matter of law. We disagree.

---

[3] Morris has not filed an appellee's brief in this matter.

## A. Defamation

For a private individual to sustain a defamation claim, the plaintiff must prove that: (1) the defendant published a false statement about the plaintiff; (2) the statement was defamatory concerning the plaintiff; and (3) the defendant acted with either actual malice, if the plaintiff was a public official or public figure, or negligence, if the plaintiff was a private individual, regarding the truth of the statement. *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998). A statement is defamatory if it tends to injure the person's reputation, exposing the person to public hatred, contempt, ridicule, or financial injury, or if it tends to impeach that person's honesty, integrity, or virtue. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 73.001 (West 2011) (libel); RESTATEMENT (SECOND) OF TORTS § 559 (1977) (defamation). A communication that is merely unflattering, abusive, annoying, irksome, or embarrassing, or that hurts only the plaintiff's feelings, however, is not actionable. *Means v. ABCABCO, Inc.*, 315 S.W.3d 209, 214 (Tex. App.—Austin 2010, no pet.). "To be defamatory, a statement should be derogatory, degrading, and somewhat shocking, and contain elements of personal disgrace." *Id.* (internal quotations and citations omitted).

"Whether a given statement is reasonably capable of a defamatory meaning is a question to be decided by the trial court as a matter of law." *Hancock v. Variyam*, 345 S.W.3d 157, 164 (Tex. App.—Amarillo 2011, pet. filed) (citing *Musser v. Smith Protective Servs., Inc.*, 723 S.W.2d 653, 654-55 (Tex. 1987)). "The trial court should construe the alleged defamatory communication as a whole in light of the surrounding circumstances based upon how a reasonable person of ordinary intelligence would

perceive it, considering the surrounding circumstances and the context of the statement." *Id.* (citing *New Times, Inc. v. Isaacks*, 146 S.W.3d 144, 153 (Tex. 2003); *Turner v. KTRK TV, Inc.*, 38 S.W.3d 103, 114 (Tex. 2000)). "This is an objective test, not a subjective one." *Id.* (citing *Issacks*, 146 S.W.3d at 157). "Thus, the parties' opinion of the statements . . . or the defendant's intent in making the statements have no bearing on whether they are defamatory." *Id.* (internal citations omitted).

Slander constitutes a "defamatory statement that is orally communicated or published to a third person without legal excuse." *Randall's Food Mkts. v. Johnson*, 891 S.W.2d 640, 646 (Tex. 1995). A statement may be slander per se or slander per quod. *Moore v. Waldrop*, 166 S.W.3d 380, 384 (Tex. App.—Waco 2005, no pet.). If the statement is slander per quod, the plaintiff must present proof of actual damages. *Id.* If the statement is slander per se, no independent proof of damage to the plaintiff's reputation or of mental anguish is required, as the slander itself gives rise to a presumption of these damages. *Id.* To be considered slander per se, the statement must (1) impute the commission of a crime; (2) impute contraction of a loathsome disease; (3) cause injury to a person's office, business, profession, or calling; or (4) impute sexual misconduct. *Id.* Whether words are capable of the defamatory meaning the plaintiff attributes to them is a question of law for the court. *Id.*

## B. Mental-Anguish Damages

To recover mental-anguish damages, a plaintiff must produce: (1) "direct evidence of the nature, duration, or severity of [plaintiff's] anguish, thus establishing a substantial disruption in the plaintiff's daily routine"; or (2) other evidence of "a high

degree of mental pain and distress that is more than mere worry, anxiety, vexation, embarrassment, or anger." *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex. 1995). "Not only must there be evidence of the existence of compensable mental anguish, there must also be some evidence to justify the amount awarded." *Saenz v. Fid. & Guar. Ins. Underwriters*, 925 S.W.2d 607, 614 (Tex. 1996). The fact-finder "cannot simply pick a number and put it in the blank." *Id.* "There must be evidence that the amount found is fair and reasonable compensation." *Id.*

## C. Discussion

Van Meter does not challenge a specific finding made by the trial court; instead, she generally argues that the trial court's judgment is not supported by sufficient evidence.[4] "A party appealing from a nonjury trial in which the trial court made findings of fact and conclusions of law should direct his attack on the sufficiency of the evidence at specific findings of facts, rather than at the judgment as a whole." *Shaw v. County of Dallas*, 251 S.W.3d 165, 169 (Tex. App.—Dallas 2008, pet. denied) (citing *Nw. Park Homeowners Ass'n, Inc. v. Brundrett*, 970 S.W.2d 700, 704 (Tex. App.—Amarillo 1998, pet. denied)). Unchallenged findings of fact are binding on an appellate court unless the contrary is established as a matter of law or there is no evidence to support the findings. *See McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986); *Tarrant Reg'l Water Dist. v. Gragg*, 43 S.W.3d 609, 618-19 (Tex. App.—Waco 2001), *aff'd*, 151 S.W.3d 546

---

[4] We also note that Van Meter's appellate brief contains a section, entitled "Appendix"; however, no documents are attached as appendices, though the record is very small. *See* TEX. R. APP. P. 38.1(k) (providing that, unless voluminous or impracticable, the appendix in civil cases must include, among other things, the trial court's judgment or the appealable order from which relief is sought and the trial court's findings of fact and conclusions of law).

(Tex. 2004); *see also Plantation Prod. Props., L.L.C. v. Meeks*, No. 10-02-00029-CV, 2004 Tex. App. LEXIS 8206, at *10 (Tex. App.—Waco Sept. 8, 2004, no pet.) (mem. op.).

In its findings of fact, the trial court noted the following, among other things:

5. In 2007, the Defendant began routinely making comments in front of other customers insinuating that the Plaintiff and Mr. Warren were homosexual partners or lovers, often referring to them as husband and wife. She would frequently ask who the man was and who was the woman in the relationship in front of employees and other customers.

6. When asked by both men for her to stop making such comments, the Defendant became even more vociferous in her comments in front of other patrons at the cafe, which caused both the Plaintiff and Mr. Warren a great deal of public embarrassment and emotional distress.

7. Plaintiff and other witnesses testified to [sic] during the trial that Defendant repeatedly made these types of statements over Plaintiff's and Mr. Warren's repeated objections.

8. Plaintiff testified that he was concerned that other patrons of the establishment would take these statements as true, and that he definitely suffered humiliation and damage to his reputation.

9. Plaintiff believed that the Defendant's repeated statements had an adverse effect on his character in the community, as well as his family members, and impugned his character as a businessman in the community.

. . . .

11. The Defendant continued to willfully and maliciously make comments of the same or similar nature in front of other patrons and employees, thus causing Plaintiff extreme public humiliation and embarrassment.

12. There is ample evidence before the Court that Defendant's comments were extreme and outrageous.

. . . .

17. The Plaintiff testified that he was caused to suffer pecuniary injuries in the amount of not less than $10,000.00, as well as court costs in the amount of $289.00.

Morris testified that Van Meter repeatedly made false and derogatory comments to other customers and employees at Van Meter's restaurant about Warren and him, insinuating that they had a homosexual relationship. Morris further testified that he was very embarrassed and humiliated by the comments and that, in addition to court costs and attorney's fees associated with this matter, he sustained approximately $10,000 in damages to his business and reputation as a result of the comments. While we recognize that Morris admitted that the reduction in his business could have been attributed to the slow-down in the economy, Warren and Hammons stated that Morris's business suffered due to Van Meter's comments and Morris noted that people probably stopped doing business with him after Van Meter began making the comments. *See Shaw*, 251 S.W.3d at 169 ("Additionally, in a nonjury trial, the trial court is the sole judge of the credibility of the witnesses and the testimony's weight. The trial court may believe one witness and disbelieve others and may resolve any inconsistencies in a witness's testimony." (internal citation omitted)). In addition, Warren and Hammons implied Morris sustained a stroke because of the stress caused by Van Meter's comments. Furthermore, Van Meter did not call any witnesses, nor did she offer any testimony to refute any of the evidence proffered by Morris at trial.

In disregarding all evidence contrary to the trial court's findings, as we are required to do, we find that there is some evidence supporting the trial court's factual findings. *See McGalliard*, 722 S.W.2d at 696-697 ("To determine a 'no evidence' or

'matter of law' point[,] this Court must disregard all evidence contrary to the trial court's finding, and if there is any remaining evidence which would support the verdict or judgment, the trial court's judgment must be upheld. If, after the removal of all contrary evidence, this [C]ourt finds an absence of any evidence which would support the verdict or judgment, a contrary conclusion to the verdict or judgment is required as a matter of law." (internal citation omitted)); *see also City of Keller*, 168 S.W.3d at 827. As a result, in considering whether Morris proved his defamation claim, we are bound by the findings of fact that the trial court made. *See McGalliard*, 722 S.W.2d at 696; *Gragg*, 43 S.W.3d at 618-19; *see also Meeks*, 2004 Tex. App. LEXIS 8206, at *10.

In its conclusions of law, the trial court stated that Van Meter's comments were per se slanderous and determined that Morris sustained $5,000 in mental-anguish damages. Using the trial court's findings of fact and considering the surrounding circumstances, we conclude that there is sufficient evidence to support the trial court's conclusions that: (1) Van Meter made derogatory and degrading false statements about Morris to others; (2) the statements caused Morris a high degree of stress, which Warren and Hammons testified probably caused Morris to have a stroke, and injury to his business and reputation; and (3) the statements were made negligently with regard to the truth and were intended to expose Morris to public hatred, contempt, ridicule, or financial injury; and (4) Morris sustained $5,000 in mental-anguish damages as a result of Van Meter's extreme and outrageous comments. *See Issacks*, 146 S.W.3d at 153; *McLemore*, 978 S.W.2d at 571; *Woodruff*, 901 S.W.2d at 444; *Johnson*, 891 S.W.2d at 646; *see also Hancock*, 345 S.W.3d at 164; *Means*, 315 S.W.3d at 214. As a result, we further

conclude that the record contains sufficient evidence establishing that Van Meter's statements were per se slanderous, especially considering that the record supports the trial court's findings that Morris's business sustained losses and Morris's reputation was harmed as a result of Van Meter's statements. *See Johnson*, 891 S.W.2d at 646; *see also Moore*, 166 S.W.3d at 384. Accordingly, we hold that there is sufficient evidence establishing Morris's defamation claim. *See Issacks*, 146 S.W.3d at 153; *McLemore*, 978 S.W.2d at 571; *Woodruff*, 901 S.W.2d at 444; *Johnson*, 891 S.W.2d at 646; *see also Hancock*, 345 S.W.3d at 164; *Means*, 315 S.W.3d at 214. Van Meter's sole issue in this appeal is overruled.

## V. CONCLUSION

We affirm the judgment of the trial court.


                              AL SCOGGINS
                              Justice


Before Chief Justice Gray,
        Justice Davis, and
        Justice Scoggins
        Affirmed
Opinion delivered and filed December 14, 2011
[CV06]