**AFFIRMED and Opinion Filed December 28, 2020**



**In The**

**Court of Appeals**

**Fifth District of Texas at Dallas**

**No. 05-20-00224-CV**

**HAL HAWKINS, Appellant**
**V.**
**MATTHEW T. KNOBBE, Appellee**

**On Appeal from the 162nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-19-08280**

## MEMORANDUM OPINION

Before Justices Whitehill, Pedersen, III, and Reichek
Opinion by Justice Reichek

Hal Hawkins appeals the trial court's order dismissing his defamation lawsuit against Matthew T. Knobbe pursuant to the Texas Citizens Participation Act (TCPA). In a single issue, Hawkins contends the trial court erred in granting the motion to dismiss because he presented a prima facie case of defamation. For the reasons set out below, we overrule his issue and affirm the trial court's order.

### Factual Background

Hawkins organizes classic videogame tournaments through his business, Retro World Series. Tecmo Super Bowl is a classic video football game released on

Nintendo in 1991 that is still played competitively by a large community of people. The primary website used by fans is tecmobowl.org and is owned by Knobbe. The website has more than 11,000 members who post messages and discuss the game. David Murray was the director of marketing and public relations and an administrator for the website. Murray also owned the largest Tecmo Bowl tournament in the world, Tecmo Madison in Wisconsin.

In May 2018, Hawkins agreed to take over management of a Tecmo Bowl tournament in Dallas, which was run by Murray the previous year. Hawkins created a Facebook page and also posted the tournament to tecmobowl.org's Live Tournament forum. On July 4, Knobbe posted a comment on the tournament thread created by Hawkins. This post is the source of Hawkins's defamation claim:

> I need to speak to his tournament; last year Dave [Murray] had a Tecmo Madison event here and this spring Hal took the event with no courtesy call nor notification the week before Tecmo Madison. This was also the cause of friction when Hal decided he was additionally entitled to promote his upcoming tour not on the TSB page but on the Tecmo Madison discussion page. (Why not just buy a spot on the stream of [sic] want exposure?) Just recently he flagged the previous Dallas Facebook page as a duplicate and it was deleted. No doubt this will all be called "business moves" but let me say that using this community to promote events while giving no regards to its members is bad business and to be frank, a complete dick move.

> Overall the Tecmo Tour seems be [sic] like a nice summer league in locations that normally don't see much action, which is great. However this particular event won't be pinned and while I'm not going to tell anyone what to do, I would personally not attend this event if I lived in Dallas.

Hawkins responded to the post, calling Knobbe's comments "absolutely, unsubstantiated gossip." Hawkins said he did not "flag" the previously existing Facebook page and attached his "Support inbox" to disprove this "blatantly false accusation." He also said the "Expo board" had given him the responsibility of Tecmo Dallas after Murray failed to respond to a request to do so.

Knobbe countered that "[s]omeone flagged that page and if/when Dave appeals it I guess we'll know for sure." He acknowledged Hawkins obtained the tournament "fair and square" but criticized him for "not once" asking Murray about it: "It simply didn't occur or matter to you that anyone else in this community who wanted to do the same thing would have reached out to Dave. You did the guy wrong and I'm calling you out about it. . . .that's the long and short of it."

After further posts between the two men, Hawkins demanded a full retraction and apology for Knobbe's claims that he (1) "report[ed] Dave's alleged FB page" and (2) "took the [Dallas] event without Dave's knowledge." In addition to the posts between Hawkins and Knobbe, two other members made comments siding with Hawkins. For example, one member posting as "suicideking81," asked if "we know 100% that this was ripped from Dave's hands" and later added that Knobbe was "making it seem like [Hawkins] stole this event from Dave." Another, posting as "trojan1979," stated that he believed Hawkins was "being falsely accused" based on "incomplete information" and was owed a "public apology."

On July 5, Knobbe posted that when he learned the details regarding the removal of the Facebook page, he would post them, and if he was wrong, would apologize.  In response to suicideking81's post, Knobbe said, "There are a billion facebook pages out there and they don't just DMCA report themselves."  (In the context of this case, DMCA refers to section 512 of the Digital Millennium Copyright Act.  *See* 17 U.S.C. § 512.)

On July 6, two days after his initial post, Knobbe updated his post to "reflect" that he did not know who pulled the Facebook page and said what he was "really looking for here is an acknowledgment that this event [Tecmo Dallas] was booked without the common courtesy of asking Dave first whether or not he planned to continue with it. . . ."  Hawkins responded that Knobbe's post was "not good enough" and he wanted a "complete retraction and public apology."  Hawkins said Knobbe, without knowing who was "responsible for the DMCA from the beginning," had "publicly accused" him by name.  He further stated that Knobbe's post had over 400 views before Knobbe edited it, so his personal reputation and business had been damaged.

On July 9, Knobbe reiterated that he had changed the post and endorsed the Dallas tournament, saying he had "no doubt" it would be a "fine tournament."  He added:

> When I posted that I thought you had Dave's DMCA page pulled it was a poorly thought out assumption on my part and for that I do apologize. Who else would really care?  It was a careless assumption.  I now know

–4–

with certainty that it wasn't you and from reading your posts I suspect that you had no idea that it was being done and the person who did do this probably still hasn't even bothered to tell you in confidence.

Hawkins sued Knobbe for defamation for accusing him of (1) "stealing the tournament" from Murray and (2) filing a false Digital Millennium Copyright Act (DMCA) complaint in violation of 17 U.S.C. § 512(f), which provides a remedy for injury resulting from a wrongful takedown notice. He asserted the Tecmo Dallas tournament, held three weeks after Knobbe's post, had only eight participants compared to the twenty-eight participants the previous year. He also claimed he was forced to cancel a tournament in New Orleans. He sought damages for past and future loss of character and reputation, lost profits, mental anguish, and punitive damages.[1]

Knobbe filed a motion to dismiss under chapter 27 of the Texas Civil Practice and Remedies Code asserting the lawsuit was filed in retaliation of his free speech rights. In part, he argued that the statements were not defamatory. Hawkins responded, arguing the gist of the posts accused him of committing crimes, i.e., filing a false DMCA claim and committing theft by "stealing the tournament."

After considering the moving papers, other pleadings, and the parties' arguments, the trial court granted the motion. In its January 8, 2020 order, the court dismissed the cause with prejudice and also ordered that Knobbe recover his

---

[1] Hawkins also sued Murray but nonsuited him three months later.

reasonable attorney's fees, costs, and expenses in defending the action as well as mandatory sanctions. No amount of attorney's fees, however, was awarded. Knobbe then filed an application for fees, costs, and expenses, supported by his lawyer's affidavit and invoices. On February 17, 2020, the trial court signed an order awarding Knobbe costs and expenses, $18,725 in attorney's fees, and $1,500 as a sanction. This appeal ensued.

**Jurisdiction**

Before turning to the merits of this appeal, we first address a jurisdictional issue raised by Knobbe. He contends the January 8 order disposed of all parties and issues and was the final order in the case. Knobbe argues that since Hawkins's notice of appeal was not filed until February 18, which was more than thirty days later, the appeal is untimely and should be dismissed. *See* TEX. R. APP. P. 26.1. (notice of appeal must be filed within thirty days of judgment unless the timeline extended by filing proper postjudgment motion or request for finding of fact and conclusions of law).

This Court previously concluded a judgment that awards attorney's fees but fails to specify an amount is not final. *See Chado v. PNL Blackacre, L.P.*, No. 05-04-00312-CV, 2005 WL 428824, at *1 (Tex. App.—Dallas Feb. 24, 2005, no pet.) (mem. op.). Accordingly, we conclude the January 8, 2020 order, which ordered that Knobbe recover attorney's fees, costs, and expenses but failed to state an amount, was interlocutory. The order was subsequently made final on February 17,

–6–

2020, when the trial court awarded a specific amount of attorney's fees, costs, and expenses in the case. *Id.* Hawkins timely filed his notice of appeal the next day; consequently, we have jurisdiction over this appeal.

## Dismissal under the TCPA

The TCPA protects citizens from retaliatory lawsuits that seek to silence or intimidate them from exercising their rights in connection with matters of public concern. *In re Lipsky*, 460 S.W.3d 579, 584 (Tex. 2015) (orig. proceeding); *see generally* TEX. CIV. PRAC. & REM. CODE ANN. § 27.001–.011.[2] Its stated purpose is to "encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." TEX. CIV. PRAC. & REM. CODE ANN. § 27.002. It accomplishes this purpose by establishing a burden-shifting scheme that, if satisfied, results in a relatively expedited dismissal of claims brought to intimidate or silence a defendant's exercise of a protected right. *ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 898 (Tex. 2017) (per curiam).

Under this scheme, the movant has the threshold burden of showing by a preponderance of the evidence that the legal action is based on or in response to the movant's exercise of the right to free speech, the right of association, or the right to petition, as defined in the statute. TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(b).

---

[2] The Texas Legislature amended the TCPA effective September 1, 2019. Those amendments apply to "an action filed on or after" that date. Act of May 17, 2019, 86th Leg., R.S., ch. 378, § 11, 2019 Tex. Sess. Law. Serv. 684, 687. This lawsuit was filed on June 7, 2019; thus, the law in effect before September 1, 2019 applies. *See* Act of May 21, 2011, 82d Leg., R.S., ch. 341, § 2, 2011 Tex. Gen. Laws 961–64, amended by Act of May 24, 2013, 83d Leg., R.S., ch. 1042, 2013 Tex. Gen. Laws 2499–2500. All citations to the TCPA are to the version before the 2019 amendments took effect.

If the movant meets this burden, the nonmoving party must establish by clear and specific evidence a prima facie case for each essential element of its claim. *Id.* § 27.005(c). If the nonmoving party satisfies this requirement, the burden shifts back to the movant to prove each essential element of any valid defense by a preponderance of the evidence. *Id.* § 27.005(d).

We review de novo the trial court's determination that the parties met or failed to meet their burdens of proof under section 27.005. *Dallas Morning News, Inc. v. Hall*, 579 S.W.3d 370, 377 (Tex. 2019). In conducting this review, we consider, in the light most favorable to the nonmovant, the pleadings and any supporting and opposing affidavits stating the facts on which the claim or defense is based. *Dyer v. Medoc Health Servs., LLC*, 573 S.W.3d 418, 424 (Tex. App.—Dallas 2019, pet. denied).

Here, Hawkins does not argue that the TCPA does not apply; he argues only that he made out a prima facie case of defamation, and the trial court thus erred by granting Knobbe's motion to dismiss. Accordingly, we limit our review to whether Hawkins established by clear and specific evidence the elements of his claim, and in particular whether, as Hawkins claims, the gist of Knobbe's forum posts implied that he committed crimes.

Defamation is a false statement made about a plaintiff that is published to a third party without legal excuse and which damages the plaintiff's reputation. *Moore v. Waldrip*, 166 S.W.3d 380, 384 (Tex. App.—Waco 2005, no pet.). The

elements of a defamation cause of action include (1) the publication of a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, (3) while acting with actual malice, if the plaintiff was a public official or public figure, or negligence, if the plaintiff was a private individual, regarding the truth of the statement, and (4) damages, in some cases. *In re Lipsky*, 460 S.W.3d at 593; *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998). In a defamation case, the threshold question is whether the words used "are reasonably capable of defamatory meaning." *Tatum*, 554 S.W.3d at 624.

Defamation can be per se or per quod. *Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 624 (Tex. 2018.). Defamation per se occurs when a statement is so obviously detrimental to one's good name that a jury may presume general damages, such as for loss of reputation or for mental anguish. *Id.* Defamation per quod is simply defamation that is not actionable per se. *Lipsky*, 460 S.W.3d at 596. A statement that imputes the commission of a crime is a form of defamation per se. *Moore*, 166 S.W.3d at 384.

Historically, the common law also used the term "defamation per se" to refer to a statement that "is defamatory by its text alone" and the term "defamation per quod" to refer to a statement "whose defamatory meaning required reference to extrinsic facts." *Tatum,* 554 S.W.3d at 625. Because this distinction "is not the same as that between defamation which is actionable of itself and that which requires proof of special damages," the supreme court has adopted the terms "textual defamation"

to refer to "defamation that arises from the statement's text without reference to any extrinsic evidence" and "extrinsic defamation" to refer to "defamation that *does* require reference to extrinsic circumstances." *Id.* at 626.

Defamation by implication is a subset of textual defamation. *Id*. at 627. In such a case, the defamatory meaning arises from the statement's text, but it does so implicitly. *Id*. When the plaintiff claims defamation by implication, the judicial task is to determine whether the meaning the plaintiff alleges arises from an objectively reasonable reading. *Id*. at 631. The appropriate inquiry is objective, not subjective. *Id*. In other words, the judicial role is not to map out every single implication that a publication is capable of supporting; rather, the judge's task is to determine whether the implication the plaintiff alleges is among the implications that the objectively reasonable reader would draw. *Id*. As the supreme court has explained:

> The objectively reasonable reader aids in the inquiry, as 'prototype . . . who exercises care and prudence, but not omniscience, when evaluating allegedly defamatory communications.' He does not place 'overwhelming emphasis on a[ny] single term. Nor does he 'focus on individual statements' to the exclusion of the entire publication. The objectively reasonable reader internalizes all of a publication's reasonable implications. When doing so, he considers inferential meaning carefully, but not exhaustively. He performs analysis, but not exegesis.

*Id*. (citations omitted).

Here, Hawkins argues Knobbe's multiple posts, when read together, constituted defamation per se because they implied that he committed crimes by "stealing the tournament from Murray by making a false Digital Millennium

–11–

Copyright Act complaint on Facebook." With respect to the removal of the Facebook page, he argues that false DMCA reports are considered misrepresentations and subject the false reporter to civil liability. *See* 17 U.S.C. § 512(f) (providing for recovery of "any damages, including costs and attorneys' fees, incurred by the alleged infringer . . . who is injured by such misrepresentation, as a result of the service provider relying upon such misrepresentation in removing or disabling access to the material or activity claimed to be infringing. . . ."). Because the complaints must be made under oath, *see id.* § (c)(3)(A)(vi), Hawkins argues they subject the reporter to perjury and "[f]alsely claiming to own another person's copyright is therefore a crime." As to Knobbe's claim that Hawkins "took" or "stole" the tournament from Murray, Hawkins argues that "[u]nlawfully taking intangible property" is theft, citing to section 31.03(a) of the Texas Penal Code. He complains this gist was "understood by others," relying on suicideking81's post that Knobbe was "making it seem like Hal stole this event from Dave" and trojan1979's's post loosely characterizing Knobbe's statement as "Hal stole this."

Having examined the posts, we cannot conclude that an objectively reasonable reader would draw the implication of criminal conduct that Hawkins alleges. The posts did not explicitly or implicitly accuse Hawkins of any crime. Any use of the words "steal" or "stolen" were used by others; Knobbe used the word "took" when referring to Hawkins's running of the event. Regardless, we conclude all of these words were used in the metaphorical sense, and no reasonable reader could perceive

–12–

that Hawkins actually committed a criminal act of "theft" by running the tournament without first notifying Murray.

As for the DMCA complaint, we initially agree with Knobbe that the general public, or more accurately the reasonable reader, likely is not aware of what a "DMCA claim" or what the acronym DMCA even means. At any rate, Hawkins does not argue that accusing him of making a false DMCA claim implied a crime; he contends that because the statute requires DMCA complaints to be under penalty of perjury, Knobbe has in effect accused him of perjury, which is a crime. But the implication Hawkins urges is simply too remote. There is no mention of perjury in the posts and no reasonable reader could imply that from the posts. At best, Knobbe's posts, though admittedly false, do nothing more than "call out" Hawkins for acting out of turn and doing Murray "wrong" by taking over the Dallas tournament without giving notice and accuse him of removing a Facebook page. The posts by suicideking81 and trojan1979, relied upon by Hawkins, do not suggest otherwise.

We conclude that the implication of criminal conduct is not among the implications that an objectively reasonable reader would draw; thus, Knobbe's posts are not reasonably capable of the defamatory meaning Hawkins alleges. Because Hawkins has failed to establish, by clear and specific evidence, a prima facie case of defamation, we further conclude that the trial court did not err by dismissing his suit pursuant to the TCPA.

We affirm the trial court's order of dismissal.

/Amanda L. Reichek/
AMANDA L. REICHEK
JUSTICE

200224F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

HAL HAWKINS, Appellant

No. 05-20-00224-CV      V.

MATTHEW T. KNOBBE, Appellee

On Appeal from the 162nd Judicial District Court, Dallas County, Texas Trial Court Cause No. DC-19-08280. Opinion delivered by Justice Reichek; Justices Whitehill and Pedersen, III participating.

In accordance with this Court's opinion of this date, the trial court's order of dismissal is **AFFIRMED**.

It is **ORDERED** that appellee MATTHEW T. KNOBBE recover his costs of this appeal from appellant HAL HAWKINS.

Judgment entered December 28, 2020.