In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-21-00338-CV**
_____

**JORDAN ROGERS, Appellant**

**V.**

**BENJAMIN DAVID BRYAN, Appellee**

On Appeal from the 457th District Court
Montgomery County, Texas
Trial Cause No. 21-04-05679-CV

**MEMORANDUM OPINION**

In this accelerated interlocutory appeal, pro se Appellant Jordan Rogers ("Rogers") appeals the trial court's order denying her motion to dismiss a counterclaim filed by Appellee Benjamin David Bryan ("Benjamin" or "Ben") who is a defendant in the lawsuit filed by Rogers. Rogers filed her motion to dismiss pursuant to the Texas Citizen's Participation Act ("TCPA"). *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.001-27.011, 51.014(a)(12) (authorizing interlocutory appeal

1

of an order denying motion to dismiss filed under TCPA section 27.003).[1] We affirm.

Procedural Information

Rogers filed a pro se original petition against Benjamin for breach of contract and intentional infliction of emotional distress.[2] Rogers alleged that she purchased a golden retriever in January 2021 and offered the dog for sale to Benjamin in April 2021. According to the petition, Rogers then "made an oral offer of her dog" to Benjamin "to accept her dog for free" under the condition that he take adequate care of the dog, and Benjamin requested a seven-day trial period with the dog. Rogers alleged that before Benjamin accepted the offer to keep the dog for "free," she requested payment for the dog or return of the dog, but Benjamin refused. Rogers alleged in the petition that when she communicated that she would involve law enforcement to recover the dog, Benjamin sent her "a threatening text with videos and photographs of his criminal sexual indecency with a child by exposure

---

[1] The TCPA applies to "a legal action [that] is based on or is in response to a party's exercise of the right of free speech, right to petition, or right of association or arises from any act of that party in furtherance of the party's communication or conduct described by Section 27.010(b)[.]" Tex. Civ. Prac. & Rem. Code Ann. § 27.003(a).

[2] Two days after the trial court signed the order denying Rogers's TCPA Motion to Dismiss, Rogers filed a Second Amended Petition and Request for Disclosure which added Benjamin's ex-wife, Lindsay Theresa Bryan, as a defendant. Because Lindsay Theresa Bryan was not a party to the suit at the time the TCPA Motion to Dismiss was denied, Lindsay Theresa Bryan is not a party to this appeal.

December 6, 2020 incident[]" and a video of him participating in a sexual act involving another dog. Rogers alleged she notified law enforcement.

Rogers alleged in the petition that six days into Benjamin's trial period with her dog, she sent a cell phone text to Benjamin "revoking her free offer with conditions and seven day trial period and communicated a new offer of selling the dog" to Benjamin. According to Rogers, she revoked her offer before Benjamin clearly accepted the dog or paid any consideration, and Benjamin was in breach of contract because he neither returned her dog nor paid her consideration for the dog. Rogers sought actual damages, recission, exemplary damages, court costs, and pre-judgment and post-judgment interest. Rogers also alleged Benjamin inflicted severe emotional distress on her by sending her pornography, and she sought actual damages, exemplary damages, court costs, and pre-judgment and post-judgment interest on her intentional infliction of emotional distress claim. Rogers attached an exhibit to her original petition which is an 8 1/2" x 11" printout of a photograph on which she typed "Defendant pedophile Ben Bryan[,]" and underneath that phrase is what appears to be a photograph of a man in a vehicle, with two children in car seats in the back seat, and a dog sitting in the passenger seat, and then she also typed on it the words "Felony Arrest Warrant."[3]

---

[3] In her petition, Rogers does not refer to the attached exhibit for any purpose, nor does she provide an explanation of the source of the exhibit. Additionally, throughout the petition Rogers refers to Benjamin as "Defendant child molester[,]"

Benjamin filed an Original Pro Se Answer, Jury Demand and Counter-Claim, and he alleged that Rogers's pleadings were "entirely false, libelous and frivolous in violation of Chapters 9 & 10 of the Texas Civil Practice[] & Remedies Code."[4] According to Benjamin, Rogers asked him to take custody of the dog to prevent further physical abuse that the dog was experiencing, and Benjamin alleged he did not have a contract with Rogers. Benjamin alleged that Rogers's intentional infliction of emotional distress claims were entirely false and baseless, and that the trial court should strike her petition and assess penalties and sanctions. Benjamin asserted a counterclaim against Rogers for defamation, alleging that Rogers had "engaged in an ongoing and unlawful scheme to publish and otherwise communicate these false and defamatory claims to the public for the purpose of financial gain[,]" and Benjamin sought actual and punitive damages from Rogers.

Rogers filed an Original Answer to the counterclaim and generally denied the counterclaim, asserted special exceptions and various defenses (including "absolute privilege, judicial privilege, qualified privilege, and common-law qualified

---

"Defendant sexual predator[,]" "Defendant pervert[,]" "Defendant sex offender[,]" "Defendant pedophile[,]" "Defendant sex trafficker[,]" "Defendant sex addict[,]" "Defendant drug addict[,]" "Defendant crook[,]" "Defendant con artist[,]" "Defendant thief[,]" "Defendant swindler[,]" "Defendant liar[,]" "Defendant criminal[,]" "Defendant defalcator[,]" and "Defendant coward[.]"

[4] Benjamin's original answer and counterclaim was filed pro se, but after Rogers filed her TCPA Motion to Dismiss and prior to Benjamin filing his first amended answer and counterclaim, an attorney appeared for Benjamin and filed a Notice of Appearance of designated counsel.

privilege[]"), and asked the trial court to dismiss Benjamin's counterclaim and assess costs and sanctions against him. Rogers subsequently filed a motion to dismiss Benjamin's defamation counterclaim pursuant to the TCPA ("TCPA Motion"). Rogers alleged in the TCPA Motion that "[i]t is only a matter of time before a Montgomery County Grand Jury issues a felony indictment against [Benjamin] and when he is found guilty, he will be sentenced to two to ten years in the Texas State Penitentiary at Huntsville." Rogers argued that Benjamin's claims were based on her exercise of her right to petition and her exercise of her right of free speech. According to Rogers, the statements she made about Rogers were about matters of public concern because

> [c]rimes are by definition "a matter of public concern," especially the crime of indecency with a child that requires upon conviction, the defendant's personally identifiable information be entered into the State's sex offender registration program, and notice sent to various entities warning of a sex offender's location as a matter of public concern.

In her TCPA Motion, Rogers alleged that Benjamin's counterclaim "is void of any facts to any elements of defamation, no clear and specific evidence of the facts of when, where, and what was said, the defamatory nature of the statements, and how they damaged him" as required by section 27.005(c) of the Texas Civil Practice and Remedies Code. Rogers further argued that, even if Benjamin met his burden by establishing a prima facie case for each essential element of defamation, her statements and publications were made in the course of judicial proceedings and are

5

privileged, and her defense of "absolute judicial privilege" bars Benjamin's defamation claims.

Benjamin filed a First Amended Answer and Counter-Claim, the live pleading at the time of the trial court's ruling on Rogers's TCPA Motion, wherein Benjamin alleged the following:

> Plaintiff/Counter-Defendant Rogers has engaged in an ongoing and unlawful scheme to publish and otherwise communicate the false and defamatory claims detailed in her Original Petition to the public. Rogers, and/or her agents, have done so in multiple ways, including by publishing the defamatory remarks in her petition to [Benjamin]'s neighbors, friends, and family. Rogers has also sent e-mails, text message, social media messages, and made social media posts in which she asserts as fact the vile and false claims in her petition. Untrue claims of [t]hese actions constitute unlawful slander, libel, and defamation under law. Rogers' written communications constitute Statutory Libel, because her statements injured [Benjamin]'s reputation, thus exposing him to public hatred, contempt, and/or ridicule and impeached his honesty, integrity, virtue, and reputation. The despicable claims Rogers has made—that [Benjamin] has engaged in sexual activity with children, bestiality, and other sexual misconduct and criminal offenses—are common law defamation per se. Rogers, and her agents, published these statements despite either knowing they were false, or with reckless disregard for their falsity, solely to injure [Benjamin]. [Benjamin] seeks the recovery of both actual and punitive damages from Rogers for such wrongful conduct as provided by law.

Benjamin also filed a motion for sanctions against Rogers.

Benjamin filed a response to the TCPA Motion. Therein, Benjamin argued that the trial court should deny the TCPA Motion because Rogers "has misused her 'Right to Petition' and/or 'Right to Free Speech' as a vehicle to publish false and defamatory comments" against Benjamin, and the TCPA Motion should be denied

because he could establish a prima facie case of defamation per se against Rogers, and Rogers was unable to establish an affirmative defense. Benjamin attached (1) his unsworn declaration; (2) an unsworn declaration of his ex-wife, Lindsay Bryan ("Lindsay"), along with exhibits to her declaration; and (3) an affidavit of his neighbor, Daniel Ogden Jones. According to Benjamin, his exhibits established the facts of when, where, and what was said, the defamatory nature of the statements, and how they damaged him. Benjamin argued that the exhibits "show the communications [he] complains of—claims of criminal offenses and sexual misconduct—were made throughout April and May of 2021 via hard copy and digital communication (e-mail and text messages)." Benjamin argued that the defamatory nature of these communications is obvious from the face of the statements and that the statements are so obviously harmful that general damages may be presumed.

As for Rogers's affirmative defense of absolute judicial privilege, Benjamin argued that even though his defamation claim includes the defamatory communications made by Rogers in Rogers's petition, not all of Rogers's defamatory communications were made in her petition, and that the exhibits attached to his response demonstrate that copies of Rogers's petition were distributed by Rogers in Benjamin's neighborhood, they were emailed to his ex-wife, Lindsay, and dropped off at his ex-wife's residence. Additionally, Benjamin contends the judicial

privilege does not apply because Rogers's defamatory communications have nothing to do with the claims she alleged in her petition. Citing to *Landry's, Inc. v. Animal Legal Defense Fund*, 631 S.W.3d 40 (Tex. 2021), Benjamin also argued that absolute judicial privilege does not extend to communications made outside the courtroom.

In Benjamin's unsworn declaration attached to his response, he stated the following:

> Jordan Rogers has published numerous communications to multiple persons in which she claims as fact that I am or have, among other things, been/am being investigated by law enforcement agencies for sexual crimes against a minor, have engaged in sexual acts with a minor, that I am guilty of sexual crimes involving minors, that I have sent her videos and photographs of child pornography, and that I am a child molester.
>
> I recognize the email address [*******]@yahoo.com to be Jordan Rogers's e-mail address from the numerous emails sent to my ex-wife and I including documents and notifications pertaining to this lawsuit. In addition, Jordan sent me vaccination records for Bo the golden retriever after dropping him off at my house.
>
> Plaintiff's Original Petition contains these false and defamatory statements and copies of this document were distributed to many, if not all, of my neighbors at approximately 1:00 am on or about May 5, 2021 by Rogers and/or her agents. This was before I was even served notice of process in this case.
>
> All of these statements are false and were made by Rogers, or her agents. Rogers and her agents further made these statements despite knowing that they are false or made them with reckless disregard for their falsity.

In Lindsay's unsworn declaration, which was attached as an exhibit to Benjamin's response, Lindsay stated the following:

8

I have received numerous communications from Jordan Rogers in which she claims as fact that Benjamin David Bryan is or has, among other things, been/ is being investigated by law enforcement agencies for sexual crimes against a minor, engaged in sexual acts with a minor, guilty of sexual crimes involving minors, and is a child molester.

Attached as Exhibit A to this Unsworn Declaration is/ are e-mail(s) Jordan Rogers has sent me in which she makes these claims. I recognize the e-mail address shown in these e-mails, "[\*\*\*\*\*\*\*]@yahoo.com," to be hers because it is her name, has her signature, and is the same e-mail address she uses as her e-service address with the Court in her petition. She frequently e-mails me fillings [sic] from this case.

On or about May 5, 2021, I received several copies of Rogers' Petition in this lawsuit at my house and sent to me by her via e-mail. Exhibit B is a photo of some of those copies of the petition in this lawsuit that were left outside the door of my residence, and a close-up photo of the last page of the petition, claiming that Benjamin David Bryan is a child molester with a felony arrest warrant. When I returned home later that day, two more copies of the document were left on my front porch.

Exhibits A, B, and C are attached to Lindsay's declaration. Exhibit A appears to be an email from "Jordan Rogers <[\*\*\*\*\*\*\*]@yahoo.com>" dated April 30, 2021, addressed to Lindsay with the "subject" line stating "Subject: Ben Bryan arrested for child molestation[.]" The body of the email stated the following:

Lindsay,

Your ex-husband Ben Bryan has been sued in the 457th Judicial District Court of Montgomery County. Please see attached PDF to review the Original Petition.

What is important to you is Ben Bryan is currently under criminal investigation for "indecency with a child by exposure," which is a third-degree felony, punishable by 2 to 10 years in State prison.

After a Montgomery County Grand Jury convenes, Ben Bryan will be charged with "indecency with a child by exposure" and a felony arrest warrant will be issued for Ben Bryan. The details of his crime are explained in the attached Original Petition. Ben Bryan is 100% guilty as there are eyewitnesses, and videos that Ben Bryan created of the crime. All of this evidence is in possession of Montgomery County law enforcement.

The disturbing nature of Ben Bryan's child molestation criminal case means there is an extremely high probability that [your children] []may have also been involved in other child molestation acts involving Ben Bryan.

Since you have lived at [] for at least 6 months, Montgomery County now has jurisdiction over the custody of your children. You need to immediately hire a family law attorney in Montgomery County and file a SAPCR (Suit Affecting Parent Child Relationship) in Montgomery County. When you file suit, file an Emergency Temporary Restraining Order ex parte, and have the documents sealed. Attach this Original Petition as your Exhibit A. The Judge will immediately grant you a 14-day TRO full custody possession order until the TRO oral hearing. More than likely, Ben Bryan will hire an attorney and his attorney will ask you for a Rule 11 to extend the TRO by a few weeks to allow them to prepare his defense for the TRO hearing. There is a high probability that you will win the TRO, which will become a TO (Temporary Order.) Request supervised visitation for Ben Bryan, he is too dangerous as a sexual predator to allow your [children] to be around him without supervision. Over the next several months, Ben Bryan will be arrested on felony charges, and when Ben Bryan is convicted, he will also have to register as a sex offender. At that time, you will be able to request termination of parental rights for Ben Bryan to permanently protect your children from his sexual deviance.

I know this is shocking news, and you wish it weren't true, but you have to protect your children at this point. Ben Bryan knowingly and intentionally committed a felony act of indecency with a child; it was not the child's fault, and only Ben Bryan is responsible for his criminal child sex act violations.

Sincerely,

Jordan Rogers

Exhibit B is also attached to Lindsay's unsworn declaration. Exhibit B is described by Lindsay as a photograph of the papers that were left on her front porch and it shows a close-up of the last page of the petition Rogers filed against Benjamin Bryan.

In Jones's affidavit attached to Benjamin's response, Jones (a neighbor who lives in Benjamin's neighborhood) stated the following:

> My name is Daniel Ogden Jones, III. I am over the age of 18, am of sound mind, and capable of making this affidavit. The facts contained within this affidavit are true and correct and within my personal knowledge.
>
> On the Morning of May 5, 2021, I found on my property some paperwork claiming that a man who lives in my neighborhood, Benjamin David Bryan was, among other things, a child molester who had engaged in sex crimes with minors.

Rogers filed a Reply to Defendant's Response to the TCPA Motion and she filed an affidavit from herself and from Mark Thuesen. Thuesen stated in his affidavit that sometime in mid-April of 2021 he viewed phone videos and photographs sent from Benjamin to Rogers through Snapchat software showing Benjamin engaging in sexual activity with a child under five years old, and Thuesen said he reported this to law enforcement. Thuesen also stated, in relevant part, that Rogers was with Thuesen at his home in Conroe, Texas, on May 4th and May 5th

11

and Thuesen explained that Rogers could not have been "45 miles away" at Benjamin Bryan's house or "5 miles away" at Lindsay Bryan's house, at the time and dates alleged by Benjamin.

In her reply to Benjamin's response, Rogers also objected to Benjamin's evidence. She argued that Jones's affidavit was inadmissible on the grounds that the affidavit referred to "paperwork[,]" but Jones did not attach the documents to which he referred, and therefore, the affidavit also violated the best-evidence rule. She argued the attached exhibits to Lindsay's unsworn statement were not competent evidence because Lindsay's purported signature on the declaration was a forgery as evidenced by a comparison of Lindsay's signatures presented in Rogers's reply. Rogers also objected to Lindsay's unsworn declaration because she did not identify the "numerous communications" she referred to and that Exhibits A and B attached to Lindsay's unsworn declaration were not properly authenticated. Rogers objected to Benjamin's unsworn affidavit on the grounds that it contradicted his deemed admissions, and he did not identify, authenticate, or attach the "numerous communications" he referred to in the declaration, and he did not identify, authenticate, or attach the documents he described as "numerous emails" and "documents and notifications pertaining to this lawsuit[.]" Rogers also objected to Benjamin's affidavit because his statements about her email address and the dog's vaccinations were irrelevant, the declaration included factual and legal conclusions,

and the declaration was not based on Benjamin's personal knowledge. Rogers also argued that the *Landry's* opinion "is only effective from the date the opinion is delivered," and that Benjamin made no allegations of defamation occurring after the *Landry's* decision. Rogers denied distributing her Original Petition outside the courtroom but argued that even if she had, she "is authorized by law" to do so, and she argued that the result in the *Landry's* case carved out an exception that applied to these facts.

Rogers filed her own affidavit wherein she stated she had never had contact with Daniel Ogden Jones III and she had never been on his property, nor had she placed any "paperwork" describing Benjamin as "a child molester who had engaged in sex crimes with minors[]" on Jones's property. Rogers also stated in her affidavit that Benjamin "dodg[ed] service" of her petition for two weeks and that "[o]ne or more copies of [her] Original Petition left on Defendant/Counter Plaintiff [Benjamin] Bryan's property could have easily been blown by the wind onto Daniel Jones'[s] property, or another neighbor's property." According to Rogers's affidavit, she was never within five miles of Lindsay's property and never placed the Original Petition on Lindsay's property, and she never wrote the email to Lindsay attached to Benjamin's response as Exhibit A and never emailed Exhibit A to Lindsay. Rogers stated that because Benjamin was dodging service, she gave her process server Lindsay's address where Benjamin would pick up his children every week, and the

process server told Rogers that on or about May 5, 2021, he saw Benjamin inside Lindsay's house. According to Rogers, the process server thought he had identified Benjamin in the house, but the man quickly hid, the process server "did what he described as a 'drop service,' by dropping copies of [the] Original Petition" onto Lindsay's front porch. Rogers stated in her affidavit that after the process server described the man in Lindsay's house to Rogers, Rogers told the process server that he had mistakenly served Lindsay's live-in boyfriend and that the service was invalid. Rogers stated that the process server did not go back to retrieve the copies of the Original Petition. Rogers also stated that Lindsay's signature on her unsworn declaration is a forgery because it appeared to be different from the signature on documents filed in Lindsay's and Benjamin's divorce proceeding, and she alleged that Benjamin forged the signature. Rogers denied distributing copies of her Original Petition to any of Benjamin's neighbors on any day and she alleged she has "an alibi from a witness who will swear under oath" that she was with him all night from 4:20 p.m. on May 4, 2021 through the morning of May 5, 2021 at 9:30 a.m. Rogers specifically alleged in her affidavit that on December 6, 2020, while in a hotel room, she "personally saw" Benjamin commit indecency with a child by exposure and "personally saw" Benjamin videotape the incident with his cell phone. In the affidavit, Rogers also gives the names and ages of Benjamin's children. And Rogers claims in her affidavit that she knows the identity of the child that Benjamin

14

"sexually molested, [but] for privacy reasons [she would] not disclose the child's name in a public document." Rogers further stated in her affidavit that Benjamin admitted to her "that he is a chronic abuser of marijuana and other illicit drugs[]" and that he had "bragged to [her] on multiple occasions about his illicit drug abuse in front of his children while inside his home." She also claimed to have personally witnessed Benjamin smoking marijuana at his home on April 7, 2021. She stated that when she communicated to Benjamin that she would involve law enforcement to recover her dog, Benjamin sent her "a threatening text message and videos and photographs through the Snapchat software application of his sexual indecency with a child by exposure crime that occurred on December 6, 2020." Rogers stated that Benjamin also sent her a video of him committing a sexual act with a dog. According to Rogers, a Houston Police Officer contacted her because Benjamin had contacted Houston Police "to falsely report" that she was "stealing his dog" when it was her dog "that Defendant/Counter-Plaintiff [Benjamin] Bryan refused to return or pay $7,300 for." She averred that Benjamin "provided false and misleading statements to law enforcement about his false ownership of [her] dog[]" and "intentionally and recklessly requested that [she] should be arrested [for] attempting to recover [her] dog."

In a supplemental reply, Rogers objected to any live testimony or evidence being admitted at the hearing that was set later that month "because the TCPA does

15

not authorize a trial court to consider such testimony[,]" she objected to Benjamin's counsel making any statements at the hearing because those statements are not competent evidence, she stated she wanted "a running objection" to Benjamin contradicting his deemed admissions, and she stated that she was making "a running objection" to the application of the *Landry's* decision because it did not apply retroactively.

On October 5, 2021, Benjamin filed a Sur-Reply in Support of his Response to Rogers's TCPA Motion. Benjamin argued that Rogers's first fourteen objections should be struck. Benjamin argued that Rogers did not include a required statement of requested relief in her original petition so his time to respond to her discovery responses did not begin to run until the filing of her amended petition, and therefore, his answers could not be late or deemed admitted, and the issue was resolved upon the filing of his amended discovery responses. Benjamin argued in the alternative that if the trial court determined Benjamin's admissions deemed, that he be allowed to withdraw the deemed admissions because he showed good cause and no undue prejudice. According to Benjamin, his failure to sign the responses was an accident and not intentional or the result of conscious indifference and allowing him to withdraw the discovery responses would not delay trial or hinder the opposing party's ability to prepare for trial because Benjamin had already responded to the discovery requests. Benjamin also attached to his Sur-Reply an unsworn declaration

from his counsel, Alexander Taylor (Taylor). Benjamin attached a copy of Taylor's email communication with Lindsay attaching a draft of Lindsay's unsworn declaration and asking Lindsay if it is true and correct for her to confirm, and a copy of Lindsay's response that said, "Yes all is correct."

In her second reply to Benjamin's Response, Rogers objected to Benjamin's Sur-Reply as untimely because it was filed three days before the hearing on her motion to dismiss. She also objected to Taylor's unsworn declaration on the basis that it was testimony from an interested witness and his unsworn declaration was not properly authenticated.

On October 6, 2021, Rogers filed a First Amended Petition and Request for Disclosure asserting the same causes of action against Benjamin. Two days later, the trial court held its hearing on Rogers's TCPA Motion. Before the hearing on the TCPA Motion, the trial court ordered Rogers, Benjamin, and Benjamin's attorney to appear at the hearing and the court issued a subpoena for Rogers to appear.

Rogers did not appear at the hearing despite being provided notice and having a subpoena issued for her appearance. At the hearing, Benjamin's counsel argued that the evidence attached to his response to the TCPA Motion was "direct evidence of who, what, when, where, why, and how[,]" for his defamation claim, and that the evidence was sufficient to survive the TCPA Motion. The trial court took judicial notice on the record that "there is no warrant ping notification that [] Benjamin David

17

Bryan has an active felony warrant[.]" The trial court found that the unsworn declarations attached to Benjamin's response to the TCPA Motion to Dismiss were in proper form.[5] The trial court noted on the record that Rogers had used "very untraditional" and "abusive-type language[]" in her petition, that it was "unsettling" that Rogers had made such serious allegations against Benjamin but had failed to appear, and that Rogers could possibly face criminal charges as a result of her actions in the case. The trial court struck Rogers's pleadings except her TCPA Motion, ordered that Rogers had thirty days to amend her petition to remove the "defamatory, abusive language" and stated the revised petition should only be served on the parties, granted Benjamin's motion for sanctions against Rogers, and denied Rogers's TCPA Motion.[6]

---

[5] In general, "an unsworn declaration may be used in lieu of a written sworn declaration, verification, certification, oath, or affidavit required by statute[.]" Tex. Civ. Prac. & Rem. Code Ann. § 132.001(a). Such a declaration must be in writing and must be subscribed as true under penalty of perjury. *Id.* § 132.001(c). The statute requires a jurat to appear in "substantially" the same form as the template jurat before an unsworn declaration becomes operative. *Id.* § 132.001(d).

[6] The trial court heard Benjamin's counsel testify as to the reasonable and necessary attorney's fees for counsel to respond to the alleged defamatory pleadings, and the trial court granted Benjamin's motion for sanctions and ordered that Rogers pay Benjamin $9,450 in attorney's fees and $35,000 as a sanction against Rogers's conduct. Rogers does not complain about the attorney's fees or sanctions on appeal. In the written order granting Benjamin's motion for sanctions, the trial court included the following findings:

> It is clear to the Court that the pleadings Rogers has filed with This Honorable Court were brought in bad faith and/or for the purposes of harassment. Additionally, Rogers was subpoenaed to attend the hearing on this Motion and to bring with her evidence to show that her

On October 13, 2021, the trial court signed an order denying Rogers's TCPA Motion. On October 21, 2021, the trial court signed a Final Amended Order on Rogers['s] Objections to Benjamin's Response to her TCPA Motion to Dismiss and denied each of her twenty-two objections. Rogers timely filed a notice of appeal.

## Issues

In issue one, Rogers states "the TCPA Motion, hearing and ruling were timely." In issue two, she contends she met her initial burden demonstrating that the legal action is based on or is in response to her exercise of the right to free speech and the right to petition. In issue three, Rogers argues that the trial court abused its discretion in overruling Rogers's "running objection" to Benjamin's statements of fact that contradicted Benjamin's deemed admissions. In issue four, Rogers contends the trial court abused its discretion in overruling all of Rogers's objections to Benjamin's evidence. In issue five, Rogers argues Benjamin failed to establish by

---

Intentional Infliction of Emotional Distress claim was not groundless. She failed to appear.

The Court took judicial notice of the fact that there are no active warrants for Benjamin David Bryan. The Court finds that there is no basis in fact for Plaintiff[']s allegations that [Benjamin] has been convicted of a crime, has felony warrants, or has engaged in any sexual misconduct of any kind for these reasons and those described more particularly on the record. Roger[s]'s conduct has violated Tex. R. Civ. P. 13 and Tex. Civ. Prac. & Rem. Code Chapter 10. Rogers['s] non-appearance at this hearing, despite receiving notice and being subpoenaed to attend, is particularly troubling to this Court. Most troubling is exposing young minor children's faces after making the most serious allegations of child sex crimes.

clear and specific evidence a prima facie case for each essential element of his defamation counterclaim. And, in issue six, Rogers contends that she established an affirmative defense to Benjamin's defamation counterclaim and is entitled to judgment as a matter of law.

Analysis

Rogers's First, Third, and Fourth Issues

We address Rogers's first, third, and fourth issues together. In issue one, she argues "the TCPA Motion, hearing and ruling were timely." The trial court did not find otherwise. Under the Texas Rules of Appellate Procedure, which control the required contents and the organization for an appellate brief, an appellant's issue presented for appellate review is sufficient if it directs the reviewing court's attention to the error about which the complaint is made. *See Canton-Carter v. Baylor Coll. of Med.*, 271 S.W.3d 928, 931 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (citing Tex. R. App. P. 38.1). Rule 38.1(f) of the Texas Rules of Appellate Procedure requires the appellant's brief to "state concisely all issues or points presented for review." *See* Tex. R. App. P. 38.1(f). We must examine a party's issue to decide whether it is "sufficient to put [us] on notice" and "to invite [us] to correct any error of law[.]" *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 481 (Tex. 2019). Rogers's first issue does not point out any error allegedly committed by the trial court. *See id.* We overrule her first issue.

In her third issue, Rogers argues the trial court abused its discretion in overruling Rogers's "running objection" to Benjamin's statements of fact that contradicted Benjamin's deemed admissions. According to Rogers, Benjamin did not sign his request for admission answers and, therefore, the admissions are deemed admitted, and she argues the trial court should not have overruled Rogers's running objection that Benjamin's unsworn declaration contradicted his deemed admissions. The record shows that Benjamin filed original and then additional responses to Rogers's discovery requests, and he disagreed with the arguments Rogers made. Benjamin also made a request that the trial court allow him to withdraw his original responses, in the event the trial court determined that his mistake in failing to sign the original responses meant they had been deemed admitted.

"The responding party's failure to timely answer requests for admission, timely file written objections, or obtain leave of court to file the answers late, results in each request for admission being deemed admitted pursuant to Texas Rule of Civil Procedure 169." *In re Estate of Herring*, 970 S.W.2d 583, 588 (Tex. App.—Corpus Christi 1998, no pet.). Under Rule 169, the requests for admissions are deemed admitted automatically unless the responding party complies with the requirements of Rule 169(1). *Id.* at 588-89. Here, Rogers does not argue that Benjamin's original or later-filed responses were not timely; instead, she argues that the original responses were not signed by Benjamin, so she contends the admissions were

deemed admitted. After Benjamin hired an attorney, the attorney filed signed responses to Rogers's original discovery requests and requested the trial court allow him leave to withdraw the earlier responses. Even assuming without deciding that because Benjamin failed to sign his original responses means his admissions were deemed admitted, a trial court has broad discretion to permit the withdrawal of deemed admissions. *See Stelly v. Papania*, 927 S.W.2d 620, 622 (Tex. 1996). We cannot say the trial court abused its discretion in overruling Rogers's objection, and we overrule issue three.

In issue four, although Rogers contends the trial court abused its discretion in overruling all of Rogers's objections to Benjamin's evidence, Rogers states in her brief that "[a] few of Appellant's 22 objections are moot and Appellant has decided to waive a few other objections that are not a priority." On appeal, Rogers specifically argues the trial court abused its discretion in overruling her Objections 1-7, 9, 11-14, 20, and 22.

We review a trial court's ruling on the admissibility of evidence for an abuse of discretion. *Gharda USA, Inc. v. Control Sols., Inc.*, 464 S.W.3d 338, 347 (Tex. 2015). A trial court abuses its discretion when it acts in an arbitrary or unreasonable manner, or if it acts without reference to any guiding rules or principles. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). We will uphold the trial court's decision if it is within the zone of reasonable disagreement.

*Diamond Offshore Servs., Ltd. v. Williams*, 542 S.W.3d 539, 545 (Tex. 2018). We consider a trial court's ruling in light of what was before the court at the time the ruling was made. *See Stephens Cty. v. J.N. McCammon, Inc.*, 52 S.W.2d 53, 55 (Tex. 1932) ("When an appellate court is called upon to revise the ruling of a trial court it must do so upon the record before that court when such ruling was made."); *Congleton v. Shoemaker*, Nos. 09-11-00453-CV & 09-11-00654-CV, 2012 Tex. App. LEXIS 2880, at **15-16 n.3 (Tex. App.—Beaumont April 12, 2012, pet. denied) (mem. op.) ("Our review . . . is limited to the record before the trial court at the time of its ruling.").

On appeal, Rogers argues that the trial court abused its discretion in overruling Objections 1 and 2 because Jones's affidavit references "paperwork" and lacks supporting evidence and the "paperwork" is not attached to the affidavit, and therefore it violates Rule 166a(f) of the Texas Rules of Civil Procedure and Texas Rule of Evidence 1002 (the "best evidence rule"). Rule 166a(f) requires that "[s]worn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith." *See* Tex. R. Civ. P. 166a(f). The "best evidence rule" provides that "[a]n original writing, recording, or photograph is required in order to prove its content unless these rules or other law provides otherwise." Tex. R. Evid. 1002. Benjamin stated in his response to the TCPA Motion to Dismiss that Jones's affidavit was attached and that "Exhibits 1, 2, and 3 all

describe how copies of the Rogers'[s] petition were distributed through [Benjamin] Bryan's neighborhood, e-mailed to [Benjamin] Bryan's ex-wife, Lindsay Bryan, and even dropped off at her residence." A copy of Jones's affidavit was filed with the trial court and appears in the clerk's record. We cannot say that the trial court's decision to overrule the Objections 1 and 2 was an abuse of discretion because it was within the zone of reasonable disagreement. *See Williams*, 542 S.W.3d at 545.

Rogers also argues the trial court erred in overruling Objections 3 through 7, which relate to Lindsay's unsworn declaration and attached exhibits. In Objection 3, Rogers complained that Lindsay's unsworn declaration did not comply with section 132.001(a)(c)(2) of the Texas Civil Practice and Remedies Code because she argued Lindsay's signature on the unsworn declaration was "a forgery" because it appeared different than her signature that appeared on certain court documents in her divorce proceedings with Benjamin. In his Sur-Reply, Benjamin asserted Lindsay's unsworn declaration was signed in person by Lindsay and the judgment in the divorce proceeding appears to have been initialed digitally with Adobe's DocuSign. Benjamin also attached to his Sur-Reply a copy of his counsel's email communication with Lindsay attaching a draft of the unsworn declaration and asking Lindsay that if it is true and correct for her to confirm, and then Lindsay's response was "Yes all is correct." Accordingly, we cannot say that the trial court's decision

24

to overrule the Objections 3 through 7 was an abuse of discretion because it was within the zone of reasonable disagreement. *See id.*

In Objection 4, Rogers objected on the bases that Lindsay's reference in her declaration to "numerous communications" in the first paragraph of her declaration lacks supporting evidence and she does not identify, authenticate, or attach the documents she describes as "numerous communications." In Objections 5 through 7, Rogers objected on grounds that Lindsay's exhibits to her declaration were not properly authenticated because she did not state that they are true and correct copies and because Lindsay must prove that she saw the photographs attached as Exhibit B near the time of the event, that she recognizes the photographs, and that the photographs are a true and accurate representation of the subject as it appeared at that time. Lindsay describes in her declaration that she has received "numerous communications" from Rogers in which Rogers claims that Benjamin is or has been investigated by law enforcement for sexual crimes against a minor, engaged in sexual acts with a minor, is guilty of sexual crimes involving minors, and is a child molester. She then refers to Exhibit A, which is an email from Rogers "in which [Rogers] makes these claims[]" and which Lindsay attaches. Lindsay also references Rogers's petition, which was already before the trial court. And Lindsay attached a photograph that she states depicts copies of Rogers's petition left outside the door of Lindsay's residence and a photograph of the last page of the petition which was on

25

file with the trial court. Rogers's own affidavit admits that her process server, at her direction, left a copy of the petition at Lindsay's home when he was trying to serve Benjamin and the trial court could have reasonably concluded that the documents were sufficiently authenticated. We cannot say that the trial court's decision to overrule the Objections was an abuse of discretion because it was within the zone of reasonable disagreement. *See id*.

In Objections 9, 11, 12, 13, and 14, Rogers objects to Benjamin's unsworn declaration. She argues that Benjamin's declaration references "numerous communications" in the first paragraph and "numerous emails" and "documents and notifications pertaining to this lawsuit" in the second paragraph, but those references lack supporting evidence because the documents he references are not attached. Benjamin specifically refers to Rogers's email to Lindsay, which was attached to Lindsay's unsworn declaration, and to "Plaintiff's Original Petition" that "contains these false and defamatory statements" which was before the trial court. The trial court could have concluded that the challenged references in Benjamin's declaration had sufficient support or that the objection might go to the weight of the evidence but would not prevent the declaration from being considered by the trial court. In Objections 11 and 12, Rogers objected to portions of Benjamin's unsworn declaration on the grounds that some statements are impermissible legal conclusions. Rogers pointed to statements in the third paragraph of Benjamin's declaration where

26

he says "Plaintiff's Original Petition contains these false and defamatory statements . . ." and in the fourth paragraph of Benjamin's statement that "[a]ll of these statements are false and were made by Rogers, or her agents. Rogers and her agents further made these statements despite knowing that they were false or made them with reckless disregard for their falsity."

Generally, conclusory statements are not probative evidence and are not sufficient to establish a prima facie case. *See In re Lipsky*, 460 S.W.3d 579, 592 (Tex. 2015) (stating that "[b]are, baseless opinions" are not "a sufficient substitute for the clear and specific evidence required to establish a prima facie case under the TCPA."). That said, on the record that was before the trial court at the time it made its rulings on the TCPA Motion, it was within the zone of reasonable disagreement for the trial court to conclude that Benjamin's unsworn declaration, along with the other declarations attached to his responses, provided more than mere baseless opinions, and sufficiently established a prima facie claim of defamation.

In Objection 13, Rogers objects to Benjamin's statement in paragraph three of his declaration that "copies of this document were distributed to many, if not all, of my neighbors . . . by Rogers and/or her agents[]" on the grounds that it is not based on personal knowledge. The trial court could have reasonably inferred based on other evidence in the record from one of Benjamin's neighbors (Jones) that Benjamin had personal knowledge that one of his neighbors had received a copy of

27

Rogers's petition and that Rogers or her agents had distributed the petition to Lindsay and Jones. The trial did not abuse its discretion in overruling Objections 9, 11, 12, 13 and 14.

In Objection 20, Rogers argued Benjamin's Sur-Reply to her TCPA Motion to Dismiss, which was filed three days before the hearing, "was time barred as a matter of law[]" because it was filed after the allowable deadline under section 27.003(e) of the Texas Rules of Civil Procedure. A party responding to a TCPA motion to dismiss "shall file the response, if any, not later than seven days before the date of the hearing on the motion to dismiss unless otherwise provided by an agreement of the parties or an order of the court." Tex. Civ. Prac. & Rem. Code Ann. § 27.003(e). It is undisputed that Benjamin timely filed his response to the TCPA motion. After Rogers filed a Reply to that Response, Benjamin filed a Sur-Reply to address the forgery allegation Rogers makes in her Reply. The order denying Rogers's TCPA Motion states that in denying the motion the trial court considered "the pleadings on file, Rogers' Motion, [Benjamin]'s Response, any replies on file, and the arguments of counsel or the pro se Plaintiff, if any[.]" Even assuming without deciding that leave was required, we presume, based on the wording of the order, that the trial court granted Benjamin leave to file his Sur-Reply to Rogers's TCPA Motion to Dismiss. *See Griffith Truck & Equip., Inc. v. Flash Tank Servs., Inc.*, No. 14-21-00331-CV, 2022 Tex. App. LEXIS 5144, at *12 (Tex. App.—Houston [14th

28

Dist.] July 26, 2022, no pet.) (mem. op.). The trial court did not abuse its discretion in overruling Objection 20.

In Objection 22, Rogers objected to Exhibit B that Rogers argued was attached to the unsworn declaration of Alexander Taylor (Benjamin's counsel) on the grounds that Taylor never referred to Exhibit B and it had not been properly authenticated.[7] Taylor's unsworn declaration was attached as Exhibit A to Benjamin's Sur-Reply in Support of his Response to Rogers's Response. Exhibit B (email communications between Lindsay and Benjamin's counsel regarding Lindsay's unsworn declaration) was attached as the next exhibit to Benjamin's Sur-Reply and discussed in the Sur-Reply, and therefore, it was not an attachment to Taylor's affidavit. The trial court found that the unsworn declarations were in proper format and Rogers does not challenge any part of the declaration other than the lack of a reference to an exhibit and authentication. Accordingly, we cannot say that the trial court abused its discretion in overruling Objection 22. *See Downer*, 701 S.W.2d at 241-42. Issue four is overruled.

---

[7] Taylor's unsworn declaration stated that he did not receive service of Rogers's September 22, 2021 Reply to Benjamin's Response to Rogers's TCPA Motion to Dismiss by U.S. mail despite her certificate of service stating otherwise. After the trial court ruled on Rogers's TCPA Motion, Taylor became aware that the pleading had been mis-filed and Benjamin asked that Taylor's "verified objection" be withdrawn. To the extent that Rogers argues on appeal that Taylor's affidavit constitutes perjury, we note that this argument was not before the court at the time the trial court ruled on Rogers's TCPA Motion; nor was Taylor's affidavit material to the trial court's ruling on Rogers's TCPA Motion.

<u>Issues Two, Five, and Six—the Burden Shifting Process Under the TCPA</u>

We next address issues two, five, and six which pertain to the burden shifting process at issue in a TCPA challenge. A three-step burden shifting mechanism is triggered by the filing of a motion to dismiss under the TCPA. *Lipsky*, 460 S.W.3d at 586-87. First, the movant (Rogers) bears the initial burden to demonstrate that the legal action is based on or is in response to the movant's exercise of the right of free speech, the right of association, or the right to petition. Tex. Civ. Prac. & Rem. Code Ann. § 27.005(b). Second, if the movant meets her initial burden, the burden shifts to the nonmovant (Benjamin Bryan) to establish by clear and specific evidence a prima facie case for each essential element of his claim. *Id.* § 27.005(c). If the nonmovant fails to meet his burden, the trial court must grant the motion to dismiss the legal action. *See id.* § 27.005(b), (c). Third, if the nonmovant satisfies his burden, the burden shifts back to the movant to establish each essential element of a valid defense to the nonmovant's claim by a preponderance of the evidence. *Id.* § 27.005(d).

In determining whether the nonmovant's claim is subject to or should be dismissed under the TCPA, the court shall consider the pleadings, any evidence a court could consider under Rule 166a of the Texas Rules of Civil Procedure and supporting and opposing affidavits stating the facts on which the liability or defense is based. *Id.* § 27.006(a). "On appeal, the trial court's ruling on a motion to dismiss

30

under the TCPA is reviewed de novo, and the pleadings and evidence are viewed in the light most favorable to the nonmovant." *Montano v. Cronan*, No. 09-20-00232-CV, 2021 Tex. App. LEXIS 5654, at *9 (Tex. App.—Beaumont July 15, 2021, no pet.) (mem. op.) (citing *Sanchez v. Striever*, 614 S.W.3d 233, 242 (Tex. App.—Houston [14th Dist.] 2020, no pet.); *Maldonado v. Franklin*, No. 04-18-00819-CV, 2019 Tex. App. LEXIS 8747, at *7 (Tex. App.—San Antonio Sept. 30, 2019, no pet.) (mem. op)).

The TCPA protects citizens from retaliatory lawsuits that seek to intimidate or silence them on matters of public concern. *Lipsky*, 460 S.W.3d at 584. We construe the TCPA "liberally to effectuate its purpose and intent fully." *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.011(b); *see State ex rel. Best v. Harper*, 562 S.W.3d 1, 11 (Tex. 2018). The stated purpose of the Act "is to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, protect the rights of a person to file meritorious lawsuits for demonstrable injury." Tex. Civ. Prac. & Rem. Code Ann. § 27.002.

Once a TCPA Motion to Dismiss is filed, the burden is on the nonmovant to show by clear and specific evidence a prima facie case for each essential element of the claim in question, but it is not a heightened evidentiary burden. *See Andrews Cty. v. Sierra Club*, 463 S.W.3d 867, 867 (Tex. 2015) (per curiam) (citing Tex. Civ. Prac.

31

& Rem. Code Ann. § 27.005(c); *Lipsky*, 460 S.W.3d at 587). A "prima facie case" refers to evidence sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted. *See Lipsky*, 460 S.W.3d at 590 (citing *Simonds v. Stanolind Oil & Gas Co.*, 136 S.W.2d 207, 209 (Tex. 1940)). It is the "'minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true.'" *Id.* (quoting *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 223 (Tex. 2004) (per curiam)). Therefore, in the context of a motion to dismiss under the TCPA in a lawsuit for defamation, mere notice pleading will not suffice to defeat the motion, and

> . . . a [party] must provide enough detail to show the factual basis for its claim. In a defamation case that implicates the TCPA, pleadings and evidence that establishes the facts of when, where, and what was said, the defamatory nature of the statements, and how they damaged the plaintiff should be sufficient to resist a TCPA motion to dismiss.

*See id.* at 590-91. Direct evidence of damages is not required, but the evidence must be sufficient to allow a rational inference that some damages naturally flowed from the defendant's conduct. *S & S Emergency Training Sols., Inc. v. Elliott*, 564 S.W.3d 843, 847 (Tex. 2018).

We may consider circumstantial evidence to determine whether the parties met their burdens under the TCPA. *See Sierra Club*, 463 S.W.3d at 867; *Lipsky*, 460 S.W.3d at 588-89. In conducting our analysis, "'we ascertain and give effect to the Legislature's intent as expressed by the language of the statute.'" *Harper*, 562

S.W.3d at 11 (quoting *City of Rockwall v. Hughes*, 246 S.W.3d 621, 625 (Tex. 2008)). We construe the statute's words according to their plain and common meaning "'unless a contrary intention is apparent from the context, or unless such a construction leads to absurd results.'" *Youngkin v. Hines*, 546 S.W.3d 675, 680 (Tex. 2018) (quoting *Hughes*, 246 S.W.3d at 625-26). We decide the applicability of the TCPA based on "a holistic review" of the pleadings and supporting and opposing affidavits. *See Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 897 (Tex. 2018).

The TCPA defines the "[e]xercise of the right of free speech" as "a communication made in connection with a matter of public concern." *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.001(3). The TCPA also defines "[m]atter of public concern" as:

> . . . a statement or activity regarding:
> (A) a public official, public figure, or other person who has drawn substantial public attention due to the person's official acts, fame, notoriety, or celebrity;
> (B) a matter of political, social, or other interest to the community; or
> (C) a subject of concern to the public.

*Id.* § 27.001(7). The phrase "matter of public concern" commonly refers to matters "of political, social, or other concern to the community," and a subject of general interest and of value and concern to the public, as opposed to purely private matters. *Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 135 (Tex. 2019) (citing *Brady v. Klentzman*, 515 S.W.3d 878, 884 (Tex. 2017)); *see also*

33

*ExxonMobil Pipeline Co. v. Coleman*, 512 S.W.3d 895, 900 (Tex. 2017) (explaining that communications related to health and safety are a matter of public concern under the TCPA) (citing *Lippincott v. Whisenhunt*, 462 S.W.3d 507, 509-10 (Tex. 2015)). "Speech deals with matters of public concern when it can 'be fairly considered as relating to any matter of political, social, or other concern to the community[.]'" *Snyder v. Phelps*, 562 U.S. 443, 453 (2011) (quoting *Connick v. Myers*, 461 U.S. 138, 146 (1983)); *see also Creative Oil & Gas, LLC*, 591 S.W.3d at 135. "Public matters include, among other things, 'commission of crime, prosecutions resulting from it, and judicial proceedings arising from the prosecutions.'" *See Brady*, 515 S.W.3d at 884 (quoting *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 492 (1975)). To be protected under the TCPA, the communication at issue need not specifically mention the matter of public concern. *See Gensetix, Inc. v. Baylor Coll. of Med.*, 616 S.W.3d 630, 641 (Tex. App.—Houston [14th Dist.] 2020, pet. dism'd) (citing *ExxonMobil Pipeline Co.*, 512 S.W.3d at 900). In addition, the communication need not have more than a tangential relationship to a matter of public concern. *See ExxonMobil Pipeline Co.*, 512 S.W.3d at 900.

In determining whether the statements and allegations of criminal conduct that Rogers allegedly made are "a matter of public concern" under the TCPA, we are not required to determine the truth or falsity of those statements. *See In re Lipsky*, 411 S.W.3d 530, 543 (Tex. App.—Fort Worth 2013, orig. proceeding), *mand. denied*,

34

460 S.W.3d 579 (Tex. 2015). The pleadings in this case reflect that Rogers made allegations that Benjamin committed sexual offenses involving children and animals and Rogers alleged that he had been or was being investigated for the alleged crimes and that he was guilty of criminal conduct. Benjamin disputes those allegations and statements, and says they are false and defamatory. We note that most if not all of the allegedly defamatory statements Rogers made appear to have little to no nexus to Rogers's breach of contract cause of action. That said, Rogers also made a claim in her petition for intentional infliction of emotional distress, and some of the statements could possibly relate to that claim, if any.[8]

We conclude that the allegedly defamatory statements complained of here concern alleged criminal conduct which would (if true) involve a matter of public concern. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.001(7); *Brady*, 515 S.W.3d at 884; *Deaver v. Desai*, 483 S.W.3d 668, 673 (Tex. App.—Houston [14th Dist.] 2015, no pet.); *Campbell v. Clark*, 471 S.W.3d 615, 623-24 (Tex. App.—Dallas 2015, no pet.). The Texas Supreme Court has explained that at this stage of the litigation, we do not decide whether the claims or communications were "valid, partly valid, or completely concocted[.]" *See Adams*, 547 S.W.3d at 897. Benjamin's counterclaim is factually predicated on Rogers's communications and statements in her petition,

---

[8] We expressly have not determined whether any of the allegations or claims made by Rogers against Benjamin have any merit.

35

and Rogers sufficiently demonstrated her communications fall within the scope of the TCPA. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(b); *see also Adams*, 547 S.W.3d at 897. Rogers has met her initial burden to show that her communications relate to the exercise of the right of free speech, so we need not address whether her communications were also within the exercise of the right to petition. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(b); *see also* Tex. R. App. P. 47.1.

Next, we must determine whether Benjamin met his burden to establish by clear and specific evidence the elements of his defamation claim. The elements of a defamation claim are (1) the publication of a false statement of fact to a third party, (2) that was defamatory concerning the plaintiff, (3) with the requisite degree of fault, and (4) in some cases, damages. *Lipsky*, 460 S.W.3d at 593 (citing *WFAA-TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998); *Waste Mgmt. of Tex. Inc. v. Tex. Disposal Sys. Landfill, Inc.*, 434 S.W.3d 142, 146 n.7 (Tex. 2014)). The status of the person allegedly defamed determines the requisite degree of fault. *Lipsky*, 460 S.W.3d at 593. A private individual need only prove negligence, whereas a public figure or official must prove actual malice. *Id.*

A party seeking to recover on a defamation claim must plead and prove damages, unless the defamatory statements are defamatory per se. *Id.* Defamation per se refers to statements that are so obviously harmful that general damages may be presumed. *Id.* "'[A]ccusing someone of a crime, of having a foul or loathsome

36

disease, or of engaging in serious sexual misconduct' constitutes defamation per se." *Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 637-38 (Tex. 2018) (quoting *Lipsky*, 460 S.W.3d at 596); *see also Moore v. Waldrop*, 166 S.W.3d 380, 384 (Tex. App.—Waco 2005, no pet.). Whether a statement is defamatory per se is generally a question of law. *See Lipsky*, 460 S.W.3d at 596.

As stated above, the pleadings and evidence in this case reflect that Rogers made communications that attributed sexual misconduct and alleged criminal conduct by Benjamin that would be defamatory per se. Benjamin provided evidence that established Rogers distributed the communications to his neighbor and by email to Lindsay. Rogers alleged that Benjamin committed sexual offenses involving children and that he had been or was being investigated for the alleged crimes. Rogers's alleged defamatory statements are defamatory per se because they accuse him of a crime and of engaging in serious sexual misconduct. *See Dallas Morning News, Inc.*, 554 S.W.3d at 637-38 (quoting *Lipsky*, 460 S.W.3d at 596); *Moore*, 166 S.W.3d at 384. Accordingly, Benjamin need not prove actual damages. *See Lipsky*, 460 S.W.3d at 593, 596 ("Pleading and proof of particular damage is not required to prevail on a claim of defamation per se[]" nor to defeat a TCPA motion to dismiss.).

To state a prima facie claim, Benjamin must also "show that the defendant knew or should have known that the defamatory statement was false." *See French v. French*, 385 S.W.3d 61, 73 (Tex. App.—Waco 2012, pet. denied). Benjamin's

affidavit alleged that Rogers and her agents made defamatory allegations against Benjamin involving accusations that he committed sexual offenses involving minors and that he had been or was being investigated for the alleged crimes "despite knowing that they were false or made them with reckless disregard for their falsity." At the hearing on the TCPA Motion, Rogers failed to appear, and the trial court took judicial notice at the hearing that there was "no warrant ping notification that the Counterplaintiff/Defendant Benjamin David Bryan has an active felony warrant[.]" In its order granting sanctions against Rogers, the trial court found "there is no basis in fact for Plaintiff[']s allegations that [Benjamin] Bryan has been convicted of a crime [or] has felony warrants[.]" On this record and viewing the pleadings and evidence in the light most favorable to the nonmovant we conclude that Benjamin has presented at least circumstantial evidence that Rogers knew or should have known when making the defamatory statements that the statements were false. *See id.*

Defamation also requires publication to a third party. *Lipsky*, 460 S.W.3d at 593. Publication occurs if the defamatory statements are communicated orally, in writing, or in print to some third person who is "capable of understanding their defamatory import and in such a way that the third person did so understand." *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 579 (Tex. 2017). Benjamin's unsworn affidavit attached to his Response to Rogers's TCPA Motion alleged that "Jordan

Rogers has published numerous communications to multiple persons" that he is being investigated and/or committed sexual offenses involving children. His affidavit stated that Rogers sent emails to his ex-wife, Lindsay, pertaining to the lawsuit, and that Rogers's Original Petition was distributed to his neighbors on or about May 5, 2021, by Rogers and/or her agents. Lindsay's unsworn affidavit attached to Benjamin's Response to Rogers's TCPA Motion to Dismiss stated that she received communications from Rogers in which Rogers claimed as fact that Benjamin had or was being investigated by law enforcement agencies for sexual offenses involving children, and Lindsay stated that she received several copies of Rogers's Original Petition on her front porch with the last page claiming that Benjamin was a child molester with a felony arrest warrant. Lindsay attached a photograph of what she asserts was the petitions left on her porch and a copy of an email from Rogers to Lindsay wherein Rogers stated that Benjamin was being or had been investigated and had committed sexual offenses involving children, and that he was going to be arrested. Jones's affidavit stated that he is Benjamin's neighbor and that on May 5, 2021, Jones found paperwork claiming that Benjamin "was, among other things, a child molester who had engaged in sex crimes with minors."

Benjamin presented the trial court circumstantial evidence that Rogers's defamatory statements were published to a third party who was capable of

understanding and did understand the statements to be defamatory. *See id.* Viewing the pleadings and evidence in the light most favorable to the nonmovant, we conclude that Benjamin's affidavit presented clear and specific evidence of publication to a third party. *See Sanchez*, 614 S.W.3d at 242.

The burden then shifts to Rogers to establish a defense to the defamation claim. Rogers asserts that the judicial proceeding privilege applies and would be an absolute defense to the defamation counterclaim. Based on the record before us, we conclude that Rogers failed to demonstrate that the judicial proceeding privilege applies. In *Landry's, Inc. v. Animal Legal Defense Fund*, the Texas Supreme Court explained the judicial-proceedings privilege as follows:

> . . . . The judicial-proceedings privilege is straightforward: "Communications in the due course of a judicial proceeding will not serve as the basis of a civil action for libel or slander, regardless of the negligence or malice with which they are made." [] The "due course of a judicial proceeding" may include communications "in serious contemplation of such a proceeding." [] Although commonly applied in defamation cases, the privilege prohibits "any tort litigation based on the content of the communication" at issue." []
> The judicial-proceedings privilege is an absolute privilege that covers "any statement made by the judge, jurors, counsel, parties or witnesses, and attaches to all aspects of the proceedings, including statements made in open court, pre-trial hearings, depositions, affidavits and any of the pleadings or other papers in the case." [] The privilege facilitates the proper administration of justice by promoting "full and free disclosure of information . . . by participants in judicial proceedings." []
> Although the judicial-proceedings privilege traditionally applies to "statements made in open court, pre-trial hearings, depositions, affidavits and any of the pleadings or other papers in the case," [] it can

40

also include statements made "preliminary to a proposed judicial proceeding[.]" []

631 S.W.3d at 46-47 (citations omitted). In declining to extend the privilege to attorneys who publicize their clients' defamatory allegations to the media, the Court in *Landry's* explained:

> The reasoning of one court of appeals nearly a century ago remains compelling today:
>> The privilege accorded a litigant which exempts him from liability for damages caused by false charges made in his pleadings, or in the court in the course of a judicial proceeding, cannot be enlarged into a license to go about in the community and make false and slanderous charges against his court adversary and escape liability for damages caused by such charges on the ground that he had made similar charges in his court pleadings.
> [] The judicial-proceedings privilege exists to facilitate the proper administration of the justice system. It does so by relieving the participants in the judicial process from fear of retaliatory lawsuits for statements they make in connection with the proceeding itself. []

*Id.* at 48 (citations omitted).

Rogers failed to establish as a matter of law that her email to Lindsay with the defamatory communications or the copy of the petitions distributed to Lindsay or to Benjamin's neighbor were made in the course of judicial proceedings. We disagree with Rogers's position that *Landry's* does not apply retroactively. A decision of the Supreme Court operates retroactively unless the Supreme Court exercises its discretion to modify that application. *Bowen v. Aetna Casualty & Surety Co.*, 837 S.W.2d 99, 100 (Tex. 1992).

41

On the record before us, after viewing the pleadings and evidence in the light most favorable to Benjamin as the nonmovant, as we must,[9] we conclude that Benjamin presented clear and specific evidence to state a prima facie claim for defamation that is sufficient to defeat Rogers's TCPA Motion to Dismiss, and Rogers failed to demonstrate that the claim was barred by an affirmative defense. Therefore, the trial court correctly denied Rogers's motion to dismiss Benjamin's counterclaim under the TCPA. *See* Tex. Civ. Prac. & Rem. Code Ann. § 27.005(c) ("The court may not dismiss a legal action under [the TCPA] if the party bringing the legal action establishes by clear and specific evidence a prima facie case for each essential element of the claim in question."); *ExxonMobil Pipeline Co.*, 512 S.W.3d at 899. We overrule Appellant's issues, and we affirm the trial court's order.[10]

---

[9] *See Sanchez v. Striever*, 614 S.W.3d 233, 242-43 (Tex. App.—Houston [14th Dist.] 2020, no pet.); *Maldonado v. Franklin*, No. 04-18-00819-CV, 2019 Tex. App. LEXIS 8747, at *7 (Tex. App.—San Antonio Sept. 30, 2019, no pet.) (mem. op.).

[10] On appeal, Benjamin requested this Court sanction Rogers for her continued "gamesmanship" during this litigation and because she knew or should have known that this appeal was frivolous. We have  discretion to award damages for frivolous appeals. Tex. R. App. P. 45. "Sanctions will be imposed on appeal if the record clearly shows appellant had no reasonable expectation of reversal, and the appellant has not pursued the appeal in good faith." *Chamberlain v. Alexander*, Nos. 09-00-174 CV & 09-00-175 CV, 2001 Tex. App. LEXIS 4724, at *13 (Tex. App.—Beaumont July 12, 2001, no pet.); *see also Herring v. Welborn*, 27 S.W.3d 132, 145 (Tex. App.—San Antonio 2000, pet. denied) (citing *Gen. Elec. Credit Corp. v. Midland Cent. Appraisal Dist.*, 826 S.W.2d 124, 125 (Tex. 1991) (per curiam)); *Campos v. Inv. Mgmt. Props., Inc.*, 917 S.W.2d 351, 356 (Tex. App.—San Antonio 1996, writ denied). We deny Benjamin's motion for sanctions.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on October 10, 2022
Opinion Delivered January 26, 2023

Before Horton, Johnson and Wright JJ.