

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-23-00353-CV

AQUAMARINE POOLS OF TEXAS, LLC, APPELLANT

V.

CYNTHIA AMELSE, APPELLEE

On Appeal from the 26th Judicial District Court
Williamson County, Texas,
Trial Court No. 23-0315-C26, Honorable Gary Harger, Presiding by Assignment

July 12, 2024

## MEMORANDUM OPINION

Before QUINN, C.J., and DOSS and YARBROUGH, JJ.

Does a company's claim of defect-free workmanship constitute verifiable *fact* under Texas defamation law? Appellant, Aquamarine Pools of Texas, LLC, says it does. We disagree given the circumstances of this case, and affirm the dismissal of Appellant's claims against Appellee, Cynthia Amelse.

## Background

In 2021, Amelse's family bought an in-ground fiberglass pool manufactured by Aviva Pools and installed by Aquamarine. In the spring of 2022, Amelse complained to Aquamarine about a section of the pool's floor feeling "springy" or "spongy."[1]

Aquamarine contended Amelse's complaint was a manufacturer's warranty issue to be resolved by Amelse. Aviva sent a technician to investigate. By email sent to Aquamarine in October,[2] Aviva's national field services manager, Jessica Womac, opined that the problem was due, in part, to insufficient soil supporting the pool's shell:

> After our site visit on August 10th, it was determined that there will need to be some adjustments made to the backfill in certain areas. I have attached a picture from my technician that shows the areas to address. These areas show signs of, hollowing, lack of support, or ground movement.
>
> To be able to correctly repair this area we would need this addressed prior to the repair. If we were to repair the area and it falls under the same amount of stress, the damages could occur again. Please let us know how you wish to proceed with scheduling.

Aquamarine, who would apparently be responsible for providing the backfill work, disagreed with the assessment and complained to Aviva's Chief Operating Officer, David Hay. In turn, Hay telephoned Amelse on October 31, and reported (1) that Aquamarine's construction and installation of the shell was within Aviva's specifications, (2) that the technician who initially inspected the pool was mistaken in his conclusion, and (3) that there were no defects in the shell and that the Aviva warranty remained intact. The day

---

[1] Per Aquamarine's warranty request form, "Customer says there is a bubble in the shallow end of the pool that collapses when it is stood on. It is about 2' x 2' in size."

[2] Amelse was apparently aware of Womac's assessment because Womac's email to Aquamarine was sent two days after Amelse mentioned Womac's alleged statement to perform pool warranty work.

after Hay says he spoke with Amelse, Womac sent an email to Aquamarine requesting "an update on scheduling. Please advise on when you would like to proceed with scheduling this repair." Aquamarine forwarded the email to Hay, inquiring, "Why is Jessica sending this?"

On November 9, 2022, Amelse posted a one-star review for Aquamarine on Yelp, which stated:

> Had our pool installed August of 2021. It was installed months later than we were originally told but the entire industry was overextended and supply issues were a problem. Though disappointed, we understood there wasn't a lot that could be done.
>
> After using the pool Spring of 2022 we noticed several areas of the pool that felt different underfoot. We Immediately contacted our salesperson, JP, who replied with ". . . out of my wheel house . . . I'm not the person to ask . . ." (basically several random excuses) and told us to contact our pool manufacturer. This was on May 11, 2022.
>
> We then contacted Aviva (the pool manufacturer) and finally, on Aug. 12, they sent a rep out who actually got in our pool and determined the backfill was not done correctly and this was an issue the builder would have to correct. They also stated they would coordinate the repairs.
>
> It is now now [sic] Nov 9, 2022. We have not heard one word from Aquamarine/Aqua/Aqua Pools. Aviva pools has reported that Aqua pools has not coordinated with them for the repairs.
>
> Our phone calls continue to go unanswered and from what we can tell they plan on doing nothing (notice the dates, this was all reported well within one year of having the pool installed).
>
> So, moral of the story, if you want to spend $60,000.00 on a fiberglass pool that you can use for two months before discovering big, expensive, builder-caused problems, and then call the builder who totally and completely ignores you, YES, call Aquamarine Pools.
>
> Yelp really needs a negative star rating.

After Amelse's review, Hay replied to Aquamarine's inquiry about the requested follow-up, saying that Womac "is only new in her role and is still very much in a learning

3

phase," and that a senior manager determined "the [pool's] shell has no surface damage and . . . did not reveal any structural concern about the integrity of the pool shell." Aquamarine's salesperson emailed Amelse with a copy of Hay's letter and requested that she remove the negative review. When Amelse did not take down the Yelp review, Aquamarine's attorney sent a letter on December 19, demanding that Amelse "immediately retract and delete" the comments from Yelp.

In March 2023, Aquamarine filed suit alleging Amelse libeled it, and requested an injunction and a claim for attorney's fees. Amelse filed a general denial and asserted the defense of substantial truth. In May 2023, Amelse filed a motion to dismiss Aquamarine's libel suit under the Texas Citizens Participation Act (TCPA). While the motion was pending, Aquamarine moved to compel arbitration.

On August 24, 2023 (97 days after Amelse's motion had been served), the trial court held a hearing to address Amelse's TCPA motion and Aquamarine's motion to compel. For reasons not clear in the record, the court first heard the TCPA motion. Aquamarine's counsel initially argued that the TCPA motion was untimely under section 27.004(a) because the parties could not extend the hearing date by agreement beyond the 90-day period set forth in the Civil Practice and Remedies Code.[3] However, upon Amelse's argument that the parties agreed they would not object to the untimeliness of

---

[3] Aquamarine's local counsel said: "The statute contemplates that parties can agree, but it's only up to 90 days, Judge. 24 -- 27.004(a), Subsection A . . . ."

4

the hearing,[4] Aquamarine's attorney changed his position, as indicated in the following colloquy:

> THE COURT: Let's go back on the record in 23-0315-C26. Counsel, we took a short break so you could visit with [Aquamarine's co-counsel] with regard to some agreements. Where are we with that?
>
> MR. HOWELL: [Co-counsel] reported back to me just a minute ago, Judge, that he did agree to not raise that objection before the Court.
>
> THE COURT: Okay. So we're waiving the ability to raise that objection. We're not going to raise it on appeal later. We're waiving it. We go ahead and hear it today?
>
> MR. HOWELL: That's my understanding, Your Honor.

After hearing Amelse's TCPA motion, the trial court orally ruled in her favor. Regarding the motion to compel arbitration, the court referred to Aquamarine's counsel and said, "That kind of makes your issue today moot on the other one [the motion to compel arbitration], I believe, does it not?" Aquamarine's counsel agreed that "there's nothing left to decide on arbitration." On August 24, 2023, the trial court signed an order dismissing Aquamarine's original petition with prejudice and awarding Amelse attorney's fees. Aquamarine brought the present appeal.

**Analysis**

Untimely hearing on TCPA motion to dismiss

In its first issue, Aquamarine complains that the trial court erred in granting Amelse's motion to dismiss because hearing occurred more than 90 days after the motion

---

[4] Amelse's counsel argued in part, "So we had an email where [Aquamarine's counsel] said he wasn't going to object to the date of the hearing. Then he asked us to move it again, and then we moved it again and it was a mutually -- this was a mutually agreed-to date for both hearings."

was served, in violation of TEX. CIV. PRAC. & REM. CODE ANN. § 27.004(a) (stating in relevant part, "but in no event shall the hearing occur more than 90 days after service of the motion under Section 27.003, except as provided by Subsection (c)."). In response, Amelse points out that Aquamarine agreed on the record not to raise this issue on appeal. We agree with Amelse that the issue has been waived.

Texas courts have held for at least 130 years that a party may waive its right to appeal an issue by agreement. *Johnson v. Halley*, 8 Tex. Civ. App. 137, 27 S.W. 750 (1894, writ ref'd). *See also Matter of Marriage of Long*, 946 S.W.2d 97, 99 (Tex. App.—Texarkana 1997, no writ) ("Since he has expressly agreed not to appeal from the orders in question in this appeal, we have no option but to bind him to the terms of his agreement."). Additionally, parties are estopped on appeal from complaining of a trial court's adverse decision that they previously supported through deliberate, clear, and unequivocal statements. *Griffin v. Superior Ins. Co.*, 161 Tex. 195, 200, 338 S.W.2d 415, 418 (1960).[5]

When Aquamarine's counsel agreed "to not raise that objection" (i.e., that the hearing violated section 27.004(a) by occurring more than 90 days after the motion was served), the trial court sought to clarify the scope of the agreement: "*We're not going to raise it on appeal later. We're waiving it.* We go ahead and hear it today?" (emphasis added). Aquamarine's counsel confirmed the court's understanding, thereby deliberately,

---

[5] *See also Ne. Tex. Motor Lines, Inc. v. Hodges*, 138 Tex. 280, 282, 158 S.W.2d 487, 488 (1942) ("It is an elementary principle supported by many authorities that a litigant cannot ask something of a court and then complain that the court committed error in giving it to him. The rule, grounded in even justice and dictated by common sense, is that he is estopped.") (citations omitted).

clearly, and unequivocally expressing the position that the court could proceed with the TCPA hearing.

Although fundamental error[6] and certain jurisdictional defects[7] cannot be waived by agreement, the TCPA's language does not suggest that missing the hearing deadlines affects the trial court's or this Court's jurisdiction over the case or parties.[8]  Therefore, this issue does not require our consideration in the face of Appellant's prior inconsistent position.  Accordingly, we hold that even if proceeding with the dismissal hearing after the 90-day deadline would otherwise constitute reversible error, Aquamarine invited the error by taking a contrary position to what it now complains of on appeal.  We overrule Aquamarine's first issue.

Sufficiency of evidence supporting defamation per se claim

In its second issue, Aquamarine contends that the trial court erred in granting Amelse's TCPA motion because Aquamarine presented a prima facie case on its claims and Amelse presented no affirmative defense.  The TCPA protects individuals' constitutional rights to free speech while also safeguarding the right to file meritorious lawsuits for proven injuries.  TEX. CIV. PRAC. & REM. CODE ANN. § 27.002.  Accordingly, once Amelse makes an initial showing by a preponderance of the evidence that Aquamarine's libel suit is based on her exercise of free speech,[9] the trial court "shall"

---

[6] *Fed. Royalty Co. v. State*, 128 Tex. 324, 332, 98 S.W.2d 993, 996 (1936).

[7] *Austin Nursing Ctr., Inc. v. Lovato*, 171 S.W.3d 845, 849 (Tex. 2005).

[8] At least one decision from the Supreme Court of Texas lends support for this view.  In *Kinder Morgan SACROC, LP v. Scurry Cnty.*, 622 S.W.3d 835, 847 (Tex. 2021), the court considered the timeliness of filing a TCPA motion as a part of the "merits" section of the appeal, not within the jurisdictional analysis.

[9] See TEX. CIV. PRAC. & REM. CODE ANN. §§ 27.003(a), 27.005(b).

7

dismiss the action unless Aquamarine establishes a prima facie case for each essential element of the claim by "clear and specific evidence." TEX. CIV. PRAC. & REM. CODE ANN. § 27.005(c); *Youngkin v. Hines,* 546 S.W.3d 675, 679 (Tex. 2018); *In re Lipsky*, 460 S.W.3d 579, 590 (Tex. 2015) (defining "clear and specific evidence").

Aquamarine does not challenge the sufficiency of the evidence supporting Amelse's constitutional right to free speech. We therefore examine whether Aquamarine presented clear and specific evidence for every essential element of its libel claim: (1) that Amelse published a false statement of fact to a third party, (2) that the statement was defamatory concerning Aquamarine, (3) that the statement was made with the requisite degree of fault. *Lilith Fund for Reprod. Equity v. Dickson*, 662 S.W.3d 355, 363–64 (Tex. 2023). Because Aquamarine's claim is for defamation per se (claiming an injury to its office, profession, or occupation), our proper focus is on those statements accusing the Appellant "of lacking a peculiar or unique skill that is necessary for the proper conduct of the profession." *See Hancock v. Variyam,* 400 S.W.3d 59, 66-68 (Tex. 2013) (holding statements that physician lacked veracity and deals in half-truths did not constitute defamation per se because they did not "uniquely injure [plaintiff] in his profession as a physician.").[10]

To determine whether Amelse made a false statement of fact about Aquamarine's conduct, characteristics or conditions that adversely affect the business's fitness to properly conduct its trade, we assess as a matter of law whether Amelse's statements

---

[10] When a plaintiff's theory of per se defamation claims injury in one's office, profession, or occupation, we look to statements regarding the plaintiff's "conduct, characteristics or a condition that would adversely affect [its] fitness for the proper conduct of [its] lawful business, trade or profession, or of his public or private office, whether honorary or for profit . . . ." *Hancock*, 400 S.W.3d at 66 (quoting RESTATEMENT (SECOND) OF TORTS § 573 (1977)).

are constitutionally-protected opinions or verifiably false statements of fact. *Lilith Fund*, 662 S.W.3d at 363. Statements that are not verifiable as false are not defamatory. *Dallas Morning News, Inc. v. Tatum*, 554 S.W.3d 614, 639 (Tex. 2018). Even if a statement is verifiable as false, "it does not give rise to liability if the 'entire context in which it was made' discloses that it is merely an opinion masquerading as fact." *Id.* at 639 (Tex. 2018).

Aquamarine's libel claim centers on Amelse's statements about an alleged defect in the pool's installation. In that regard, Amelse's review begins with a statement that the pool feels "different underfoot." Aquamarine does not disagree; evidence indicates a "bubble" exists on pool floor that "collapse[s]" when stood on. The disagreement lies in the cause of the bubble: natural soil conditions (Aquamarine's position) or improper soil backfill during installation (Amelse's and Womac's position). Regardless of the actual cause, Aquamarine's evidence does not make a prima facie case of defamation per se for two reasons.

First, Texas law requires that defamation per se claims challenge statements on their face, without reference to extrinsic facts or innuendo. *KTRK Television, Inc. v. Robinson*, 409 S.W.3d 682, 691 (Tex. App.—Houston [1st Dist.] 2013, pet. denied); *Moore v. Waldrop*, 166 S.W.3d 380, 386 (Tex. App.—Waco 2005, no pet.). However, Aquamarine's position on the pool's condition depends on extrinsic support from other's opinions. This violates the requirement that Amelse's comments must be defamatory "in and of itself." *Id. See also Iola Barker v. Hurst*, No. 01-17-00838-CV, 2018 Tex. App. LEXIS 4555, at *23 (Tex. App.—Houston [1st Dist.] June 21, 2018, no pet.) (mem. op.) (holding that online statements about improper employment practices by a school district

9

employee are not defamation per se because verifying their truthfulness requires extrinsic evidence or innuendo).

Second, even if Aquamarine's evidence rebutting Amelse's position is relevant, it only shows differing opinions about the cause of the bubble in the pool floor. Aquamarine's position—that Hay is correct and Womac/Amelse is wrong—fails to establish a verifiable fact. *Lilith Fund*, 662 S.W.3d at 369 (holding that statements declaring abortion-funding organization to be "criminal" to constitute non-actionable opinion); *Mazaheri v. Tola*, No. 05-18-01367-CV, 2019 Tex. App. LEXIS 6588, at *10–11 (Tex. App.—Dallas July 31, 2019, pet. denied) (mem. op.) (holding that statements in an online review, where the defendant echoed other physicians' opinions over the plaintiff's regarding when to perform a medical test, constitute non-actionable opinion).

Amelse's other statements about Aquamarine's work are exhortatory, not factual: "if you want to spend $60,000.00 on a fiberglass pool that you can use for two months before discovering big, expensive, builder-caused problems, and then call the builder who totally and completely ignores you, YES, call Aquamarine Pools." This language is offered to advocate, not to disseminate facts. *Lilith Fund*, 662 S.W.3d at 367. The rhetoric may employ sarcasm, but such hyperbolic expressions do not constitute actionable defamation because no reasonable person of ordinary intelligence would perceive them as statements of verifiable fact. *See Garcia v. Seguy*, No. 13-16-00616-CV, 2018 Tex. App. LEXIS 1285, at *9 (Tex. App.—Corpus Christi–Edinburg Feb. 15, 2018, no pet.) (mem. op.) (holding online business review that described experience as "worst nightmare" and referring to plaintiff as "licensed robbers" did not constitute defamation).

10

Aquamarine also points to Amelse's statements complaining about the company's responsiveness: (1) the sales representative replied that Amelse's complaint about the pool floor was "out of [his] wheel house,"[11] (2) "We contacted Aviva (the pool manufacturer)," and (3) "We have not heard one word from Aquamarine" and "Our phone calls to continue to go unanswered and from what we can tell they plan on doing nothing . . . ."[12] Reading the comments in their proper context, we hold these statements are either non-actionable opinion or substantially true. Amelse's comments reflect her opinion about what she perceived to be deficient customer service, which cannot be proven as "false." Moreover, "[a]n allegedly defamatory article is substantially true if its 'gist' is correct, regardless of whether it 'err[s] in the details.'" *Polk Cnty. Publ'g Co. v. Coleman*, 685 S.W.3d 71, 76 (Tex. 2024). Aquamarine's response – that Amelse should look to Aviva to perform repairs to the pool's shell—does not change the truthfulness of her remarks. Moreover, even if a portion of Amelse's statement was untrue, it does not constitute actionable defamation per se, as allegations of non-responsive customer service do not uniquely harm Aquamarine's business more than any other type of business. *See Hancock*, 400 S.W.3d 66; RESTATEMENT (SECOND) OF TORTS § 573 cmt. e (1977). We overrule Aquamarine's second issue.

---

[11] According to Aquamarine, the sales representative actually said, "I am not the right person to deal with that and I don't have the resources or knowledge about it to help." The Court fails to see a relevant distinction between the two interpretations. According to Merriam-Webster, one's "wheelhouse" is the "area that matches a person's skills or expertise." "Wheelhouse," MERRIAM-WEBSTER'S DICTIONARY, https://tinyurl.com/2j4aunr4 (last visited July 2, 2024).

[12] Regarding this statement, Aquamarine reasons that "because there were no issues with [Amelse's] pool there would be no reason for Aquamarine to contact her." Aquamarine's argument does not evidence a false statement of fact, but merely an explanation for why no call was made. We reiterate here: a defamation claim does not turn on whether the publisher's statements are fair, but whether they are objectively false.

Submission to arbitration

In its third issue, Aquamarine contends that the trial court erred when it "denied" Appellant's motion to compel arbitration. It does not complain about the trial court's decision to not hear the motion to compel first, nor does it argue that the TCPA motion should have been handled by the arbitrator. Our disposition of the preceding issues pretermits review of Appellant's third issue, as there is no remaining cause of action that could be submitted to arbitration. TEX. R. APP. P. 47.1.

**Conclusion**

We affirm the judgment of the district court.

Lawrence M. Doss
Justice